Beatrice Miranda
Coconino County Detention Facility
951 E. Sawmill Rd.
Flagstaff, AZ 86001

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF ARIZONA

| | |
|---|---|
| Beatrice Miranda,<br><br>Petitioner,<br><br>v.<br><br>Tracy Nielsen, Interim Chief, Pascua Yaqui Tribe Department of Public Safety,<br><br>Kurt Braatz, Commander, Detention, Coconino County Detention Facility, and<br><br>Vincent Anchando, Supervisory Correctional Specialist, Bureau of Indian Affairs, Office of Justice Services, Division of Corrections, District 3<br><br>Respondents. | CV-09-8065-PCT-PGR-ECV<br><br>**PETITION FOR WRIT OF HABEAS CORPUS**<br><br>(25 U.S.C. § 1303<br>and<br>28 U.S.C. § 2241(c)(3)) |

## I. Introduction

1. Petitioner Beatrice Miranda is an enrolled member of the Pascua Yaqui Tribe ("the Tribe").

2. Ms. Miranda is currently serving a sentence of 910 days in custody, terminating on July 24, 2010, imposed by the Pascua Yaqui Tribal Court (the "Tribal Court").

3. Ms. Miranda is filing herewith a Request for Appointment of Counsel Pursuant to 18 U.S.C. § 3006A, in which she asks the Court to appoint the Office of the Federal Public Defender for the District of Arizona to represent her in connection with this Petition.

## II. Jurisdiction and Venue

4. Jurisdiction in this Court is proper pursuant to 25 U.S.C. § 1303 and 28 U.S.C. §§ 1331 and 2241.

5. Venue in this Court is proper pursuant to 28 U.S.C. § 1391.

## III. Parties

6. Ms. Miranda is an inmate of the Coconino County Detention Facility. Her address is Coconino County Detention Facility, 951 E. Sawmill Rd., Flagstaff, AZ 86001. Her projected release date is July 24, 2010.

7. Respondent Tracy Nielsen is the Interim Chief, Pascua Yaqui Tribe Department of Public Safety. Her address is 4725 W. Calle Tetakusim, Tucson, Arizona 85757.

8. Respondent Kurt Braatz is the Commander, Detention, of the Coconino County Detention Facility. Mr. Braatz's address is Coconino County Detention Facility, 951 E. Sawmill Rd., Flagstaff, Arizona 86001.

9. Respondent Vincent Anchando is a Supervisory Correctional Specialist with the Bureau of Indian Affairs, Office of Justice Services, Division of Corrections, District 3. His address is 400 N. 5th Street, Floor 12, Phoenix, AZ 85004.

## IV. Procedural History

10. This Petition challenges Ms. Miranda's convictions and sentences in the Tribal Court case No. CR-08-119, and the affirmance of these convictions and sentences by the Pascua Yaqui Court of Appeals (the "Tribal Appellate Court") in Appellate Case No. CA-08-015.

11. The Tribe filed an eight-count complaint against Ms. Miranda on January 26, 2008.

12. Ms. Miranda was tried before a Tribal Court judge and found guilty on all

counts on April 21, 2008. Ms. Miranda was not represented by counsel at the trial.

13. The Tribal Court sentenced Ms. Miranda to 910 days of incarceration on May 19, 2008. The judge subtracted 114 days of time served, yielding a total time remaining of 796 days, terminating on July 24, 2010. Ms. Miranda was not represented by counsel at the sentencing.

14. After Ms. Miranda was convicted and sentenced, Nicholas Fontana, an attorney with the office of the Pascua Yaqui Public Defender, entered his appearance to represent her.

15. On June 26, 2008, Ms. Miranda filed a notice of appeal. In the notice of appeal, Ms. Miranda acknowledged that the notice was not timely (it was filed eight days late), and moved the Tribal Appellate Court to accept the the appeal nevertheless, noting that she had only recently obtained counsel. The Tribe did not oppose Ms. Miranda's motion or move to dismiss her appeal.

16. In her Opening Brief on appeal, filed on September 26, 2008, Ms. Miranda raised six claims of error, based on the Pascua Yaqui Constitution, the Pascua Yaqui Code, the Indian Civil Rights Act (25 U.S.C. § 1302), and the United States Constitution.

17. Pursuant to the Tribe's Rules of Appellate Procedure, the Tribe's responsive brief was due on October 26, 2008. When the Tribe failed to file a responsive brief or motion for extension by November 5, 2008, a week after the deadline, Ms. Miranda filed a motion asking the Tribal Appellate Court to decide the appeal. A few hours later that day, the Tribe filed an extension motion requesting thirty additional days, citing "heavy caseloads, a staffing shortage, a change in the attorney of record in this matter, and a recent

change in leadership at the Pascua Yaqui Prosecutor's Office."

18. On December 8, 2008, after thirty-three more days had passed without the Tribe filing its brief or the Tribal Appellate Court ruling on the Tribe's extension motion, Ms. Miranda filed a second motion asking the Tribal Appellate Court to decide the appeal. The following day, the Tribal Appellate Court granted the Tribe an extension and set the Tribe's deadline at December 22, 2008.

19. On December 22, 2008, the Tribe filed another extension motion, citing "heavy administrative burdens" and "the numerous issues raised," and requesting an additional thirty days to file its brief.

20. The Tribal Appellate Court granted the Tribe's motion and reset the deadline for its responsive brief to January 19, 2009.

21. The Tribe filed its responsive brief on January 19, 2009. In it, the Tribe did not argue that any of Ms. Miranda's claims were waived, procedurally defaulted, or imperfectly preserved in any fashion. The Tribe urged the Tribal Appellate Court to reject all of Ms. Miranda's claims on their merits.

22. The Tribal Appellate Court issued its decision on March 29, 2009. The court did not find that any of Ms. Miranda's claims were waived, procedurally defaulted, or imperfectly preserved in any fashion. The court addressed and decided all of Ms. Miranda's claims on their merits, found them to be meritless, and affirmed her convictions and sentences. As to one claim, the court stated that it was issuing a "temporary stay" that would expire on April 30, 2009.

23. The Tribal Appellate Court is the court of last resort in the judicial department of the Pascua Yaqui Tribe. There are no judicial remedies in the Pascua Yaqui courts currently available to Ms. Miranda by which she could

pursue the claim presented in this Petition.

## V. Factual Background

24. Ms. Miranda was arrested by officers of the Pascua Yaqui Police Department on January 25, 2008. The following day, the Tribe filed an eight-count Criminal Complaint against Ms. Miranda, which was docketed as No. CR-08-119.

25. All eight counts in the Complaint related to events that transpired between Ms. Miranda and two other individuals at "approximately 10:56 p.m." within a one- or two-block area on the Pascua Yaqui reservation.

26. The Complaint charged Ms. Miranda with **(1)** Aggravated Assault on a minor referred to as "M.V."; **(2)** Aggravated Assault on Bridgette Valenzuela; **(3)** Endangerment of M.V.; **(4)** Endangerment of Bridgette Valenzuela; **(5)** Threatening or Intimidating of M.V.; **(6)** Threatening or Intimidating of Bridgette Valenzuela; **(7)** Disorderly Conduct toward M.V.; and **(8)** Disorderly Conduct toward Bridgette Valenzuela.

27. Ms. Miranda appeared at her trial *pro se*. At no time during the trial did she raise any objections, make any opening statements or closing arguments, ask questions of any witness, or present any defense.

28. At Ms. Miranda's trial, the Tribe presented the testimony of Jose G. Montano, one of the police officers who arrested Ms. Miranda, as well as alleged victims Bridgette Valenzuela and "M.V."

29. Officer Montano testified to the following facts: He was dispatched to the area where he arrested Ms. Miranda in response to a report of a female chasing another female with a knife at that location. He found Ms. Miranda near that location and arrested her. Ms. Miranda was "extremely intoxicated." Later he spoke to the alleged victims, Bridgette Valenzuela

and M.V., who told him that Ms. Miranda "was chasing them with the knife, pointed the knife at them, uh, called her names, uh, something about I'm going to kill you fucking bitches and, uh, uh, you're laughing at me and something like that." Bridgette and M.V. identified a knife recovered from Ms. Miranda as the one she had threatened them with earlier.

30. Bridgette Valenzuela testified to the following facts: She heard her younger sister M.V. banging on the locked screen door of her house at 5371 W. Koni. When she went to the door and asked what was wrong, M.V. said "there's a lady running after me with a knife." Bridgette went out to investigate and found Ms. Miranda standing outside holding a knife. Bridgette confronted Ms. Miranda, saying "what's wrong with you," then grabbed a broom and threatened to hit Ms. Miranda with it if she did not leave. Ms. Miranda said "go ahead," then started saying things in the Yaqui language, which Bridgette and M.V. did not understand. At some point, Ms. Miranda ran toward Bridgette and M.V., causing them both to go inside the house. Ms. Miranda also held and moved the knife "like if she wanted to throw it at us." At that point, M.V. threw a basketball at Ms. Miranda, striking her in the face. Ms. Miranda "backed off" and walked away, calling them "fucking bitches" and saying "you guys aren't funny," and "I'm going to kill you guys." Bridgette called the police. She remembered Officer Montano afterwards showing her the knife that was recovered from Ms. Miranda, and she identified the knife again in court.

31. M.V. testified to the following facts: She was walking down Osay Bo-Oh Street and talking on the phone when she saw Ms. Miranda banging on the door at 7520 Osay Bo-Oh. Ms. Miranda began following M.V., who was continuing to talk on the phone and laughing. Ms. Miranda said "why you

laughing at me." M.V. looked back and was "like okay whatever," then jumped up to touch a basketball net. Ms. Miranda ran after M.V., chasing her down Koni Street and "talking stuff . . . like bitches and like, uh, all that stuff." M.V.'s sister Bridgette told Ms. Miranda "you need to leave." When Ms. Miranda "reached back" with the knife, M.V. threw a basketball at her and ran inside. Ms. Miranda walked away, and Bridgette called the police. M.V. remembered Officer Montano afterwards showing her the knife that was recovered from Ms. Miranda, and she identified the knife again in court.

32. After hearing the Tribe's closing argument, the Tribal Court found Ms. Miranda guilty on all eight counts.

33. The Tribal Court held Ms. Miranda's sentencing hearing the following month. Ms. Miranda again appeared *pro se*. Ms. Miranda filed no documents related to sentencing, and did not make any statements or present any evidence at the sentencing hearing.

34. After hearing from the Tribe and a probation officer, the Tribal Court sentenced Ms. Miranda as follows: **Count 1:** 365 days incarceration; **Count 2:** 365 days incarceration; **Count 3:** 60 days incarceration; **Count 4:** 60 days incarceration; **Count 5:** 90 days incarceration; **Count 6:** 90 days incarceration; **Count 7:** 30 days incarceration; **Count 8:** 30 days incarceration. The Tribal Court specified that the sentences would run as follows: The sentences on Counts 1 and 2 would run consecutively, for a total of 730 days; the sentences on Counts 5 and 6 would run consecutively to each other and to the sentences on Counts 1 and 2, for an additional 180 days; and the sentences on the remaining counts would run concurrently with the sentences on Counts 1, 2, 5, and 6, yielding

an aggregate total of 910 days incarceration. The judge subtracted the 114 days Ms. Miranda had already served, adjusting the remaining term to 796 days, with a release date of July 24, 2010.

35. The month after Ms. Miranda was sentenced, Mr. Fontana entered his appearance in the case and filed a notice of appeal on her behalf. One of the claims raised in her Opening Brief on appeal was that Ms. Miranda's sentence violated the Indian Civil Rights Act, 25 U.S.C. § 1302(7), because it exceeded one year of incarceration in connection with a "single criminal transaction." In support of this claim, Ms. Miranda's brief cited and extensively discussed the decision of the United States District Court for the District of Minnesota in *Spears v. Red Lake Band of Chippewa Indians*, 363 F. Supp. 2d 1176 (D. Minn. 2005).

36. In its responsive brief, the Tribe addressed Ms. Miranda's claims on the merits, urging the Tribal Appellate Court to reject the District of Minnesota's holding and analysis in *Spears*.

37. The Tribal Appellate Court addressed all of Ms. Miranda's claims on their merits, found them meritless, and affirmed the Tribal Court's decision on all counts. The Tribal Appellate Court's decision included a seven-page discussion of the "single criminal transaction" issue, in which the court discussed, and explained why it did not adopt, the District of Minnesota's analysis in *Spears*. The court also stated that it was issuing a *sua sponte* "temporary stay" of its holding with respect to the "single criminal transaction" issue that would "be in effect until April 30, 2009."

## VI. Claim for Relief

**Ms. Miranda's Sentence Violates 25 U.S.C. § 1302(7) Because It Far Exceeds a Term of Imprisonment of One Year in Connection with a Single Criminal Transaction.**

38. Ms. Miranda incorporates by this reference the preceding paragraphs of this Petition.

39. 25 U.S.C. § 1302(7) prohibits any Indian tribe exercising powers of self-government from "impos[ing] for conviction of any one offense any penalty or punishment greater than imprisonment for a term of one year." 25 U.S.C. § 1302(7).

40. All eight counts contained in the Complaint against Ms. Miranda in case No. CR-08-119 relate to a single criminal transaction.

41. If the Tribal Court sentenced Ms. Miranda to a total of one year of incarceration on the eight counts contained in the Complaint in case No. CR-08-119, her term of incarceration would have ended on January 25, 2009.

42. The Tribal Court instead sentenced Ms. Miranda to an aggregate total of 910 days – two and a half years – incarceration on the eight counts contained in the Complaint in case No. CR-08-119.

43. Ms. Miranda's detention has been and is in violation of 25 U.S.C. § 1302(7) since January 25, 2009.

## VII. Prayer for Relief

44. For the foregoing reasons, in light of the above-described violation of her rights under the Indian Civil Rights Act, 25 U.S.C. § 1302(7), Ms. Miranda respectfully requests that this Court grant her Petition and issue a Writ of Habeas Corpus directing her immediate release from incarceration, as well as such other and further relief as the Court deems just and equitable.

Respectfully submitted on: _____

*Beatrice Miranda*  4/16/09
BEATRICE MIRANDA
Coconino County Detention Facility
951 E. Sawmill Rd.
Flagstaff, AZ  86001