Beatrice Miranda
Coconino County Detention Facility
951 E. Sawmill Rd.
Flagstaff, AZ 86001

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF ARIZONA

| | |
|---|---|
| Beatrice Miranda,<br><br>   Petitioner,<br><br>v.<br><br>Tracy Nielsen, Interim Chief, Pascua Yaqui Tribe Department of Public Safety,<br><br>Kurt Braatz, Commander, Detention, Coconino County Detention Facility, and<br><br>Vincent Anchando, Assistant Correctional Program Specialist, Bureau of Indian Affairs Office of Justice Services - Division of Corrections,<br><br>   Respondents. | CV-09-8065-PCT-PGR-ECV<br><br>**REQUEST FOR APPOINTMENT OF COUNSEL PURSUANT TO 18 U.S.C. § 3006A** |

    Petitioner Beatrice Miranda is an enrolled member of the Pascua Yaqui Tribe ("the Tribe"). Ms. Miranda is currently serving a sentence totaling 910 days in custody imposed by the Pascua Yaqui Tribal Court. Because she is being held in custody in violation of the Indian Civil Rights Act, 25 U.S.C. § 1302(7), Ms. Miranda is filing herewith a Petition for Writ of Habeas Corpus pursuant to 25 U.S.C. § 1303 and 28 U.S.C. § 2241. As the Financial Affidavit attached hereto as Exhibit A shows, Ms. Miranda cannot afford to hire private counsel to represent her in connection with the Petition. Ms. Miranda respectfully requests that this Court appoint the Office of the Federal Public Defender for the District of Arizona to represent her in connection with the Petition pursuant to the Criminal Justice

Act, 18 U.S.C. § 3006A (the "CJA") and the CJA Plan for the District of Arizona. The Declaration of Assistant Federal Public Defender Daniel L. Kaplan attached hereto as Exhibit B demonstrates that Mr. Kaplan has familiarized himself with the pertinent facts and legal issues and stands ready to represent Ms. Miranda in connection with the Petition.

Ms. Miranda notes that Mr. Kaplan assisted her in the preparation of this Request, as well as the Petition for Writ of Habeas Corpus filed herewith, and that these documents do not reflect upon her ability to represent herself effectively.

## Argument

**The "Interests of Justice" Require that CJA Counsel be Appointed to Assist Ms. Miranda with Her Petition for Writ of Habeas Corpus.**

**A.  Ms. Miranda is Eligible for Appointed Counsel Under the CJA, the CJA Plan for the District of Arizona, and Applicable Caselaw.**

18 U.S.C. § 3006A(a)(2)(B) specifies that a United States Magistrate Judge may appoint government-supplied counsel to represent a financially eligible individual seeking relief under 28 U.S.C. § 2241 upon the judge's determination that "the interests of justice so require." The CJA Plan for the District of Arizona in turn provides that "[r]epresentation must be provided for all eligible persons under . . . 18 U.S.C. § 3006A." CJA Plan for the District of Arizona Part IV.A.1 (*adopted by* General Order 07-08). In deciding whether to appoint counsel in a habeas proceeding, the Court generally should "evaluate the likelihood of success on the merits as well as the ability of the petitioner to articulate his claims pro se in light of the complexity of the legal issues involved." *Weygandt v. Look*, 718 F.2d 952, 954 (9th Cir. 1983).

In the instant case, the requisites for the appointment of CJA counsel are present. Ms. Miranda is "financially eligible," as shown by the Financial Affidavit

attached hereto as Exhibit A. Ms. Miranda is seeking relief under 28 U.S.C. § 2241, as the Petition for Writ of Habeas Corpus filed herewith demonstrates. Section 2241 is applicable, because Ms. Miranda is "in custody in violation of the Constitution or laws or treaties of the United States" (*id.* § 2241(c)(3)) – specifically, she is in custody in violation of the Indian Civil Rights Act, 25 U.S.C. § 1302(7). Ms. Miranda's right to pursue habeas corpus relief is further confirmed by 25 U.S.C. § 1303, which provides that "[t]he privilege of the writ of habeas corpus shall be available to any person, in a court of the United States, to test the legality of his detention by order of an Indian tribe." Finally, the "interests of justice" require that counsel be appointed, because Ms. Miranda's claim is likely to succeed on the merits – provided that she has the assistance of counsel.

**B.     Ms. Miranda's Claim is Likely to Succeed Because Her Two-and-a-Half Year Sentence Far Exceeds the Indian Civil Rights Act's One-Year Cap.**

The claim raised in Ms. Miranda's Petition for Writ of Habeas Corpus is substantial and likely to succeed. Ms. Miranda hereby incorporates her Petition by this reference, and provides the following summary of the factual and legal basis for the claim raised in the Petition.

The portion of the Indian Civil Rights Act codified at 25 U.S.C. § 1302(7) prohibits any Indian tribe exercising powers of self-government from "impos[ing] for conviction of any one offense any penalty or punishment greater than imprisonment for a term of one year." In a recent case, the United States District Court for the District of Minnesota held that this language bars Indian tribes from sentencing individuals to more than one year of imprisonment in connection with any "single criminal transaction." *Spears v. Red Lake Band of Chippewa Indians*, 363 F. Supp. 2d 1176 (D. Minn. 2005). After thoroughly surveying the history and purpose of the Indian Civil Rights Act, the court concluded that Congress's

3

intention was to create a "balanced and logical regime" whereby "Indians accused of minor crimes faced minor penalties in tribal court where some constitutional rights were withheld," whereas "Indians accused of serious crimes faced serious penalties in federal court where all constitutional rights were available." *Id.* at 1180. If a contrary interpretation were adopted, the court stressed, "tribal court defendants would be routinely exposed to serious sentences for minor crimes without guaranteeing them all their basic constitutional rights." *Id.*

Ms. Miranda's prosecution and sentencing powerfully demonstrate the truth of the *Spears* court's observation. Ms. Miranda is serving a sentence of two and a half years in connection a "single criminal transaction" involving an encounter between her and two female tribe members on the Pascua Yaqui reservation. Although the Tribe charged her with eight separate criminal counts, the narrative accompanying each count identified the time of the offense as "approximately 10:56 p.m." on January 25, 2009, and identified the place of each offense as a one- or two-block area of the Pascua Yaqui reservation. All of the charges related to a brief encounter in which no one was hurt, but Ms. Miranda allegedly yelled profanities at two female tribe members and menaced them with a knife. Neither the Indian Civil Rights Act nor the constitution and laws of the Pascua Yaqui Tribe guaranteed Ms. Miranda government-supplied counsel, and she was unrepresented through her trial and sentencing. Through the trial and sentencing, Ms. Miranda made no objections, presented no evidence or argument, and raised no defenses. As the *Spears* court observed, Congress intended for the Indian Civil Rights Act to provide persons charged in tribal court with meaningful protections paralleling those provided in the Bill of Rights, and it was never Congress's intention that individuals would be sentenced to as much as two and a half years after having been tried and convicted without counsel.

Finally, Ms. Miranda is not able to effectively represent herself. Ms. Miranda has only a high-school education, and no legal training. This document was prepared with the assistance of Assistant Federal Public Defender Daniel L. Kaplan, whose Declaration is attached hereto as Exhibit B, and does not reflect upon Ms. Miranda's ability to represent herself effectively. Instead, Ms. Miranda's ability to represent herself effectively is illustrated by her self-representation in her trial and sentencing in the tribal court, in the course of which she filed no pleadings, made no arguments, examined no witnesses, and raised no defenses. Moreover, the issue raised in her Petition is complex, involving a difficult question regarding the interpretation of ambiguous language in a federal statute and the examination of the statute's history and purposes. The issue is also important, broadly implicating the sentencing power of Indian tribal governments across the country. Because the existing caselaw on the issue is quite limited, this Court's decision will play a crucial role in the development of this important legal issue, and will likely be of assistance to the Ninth Circuit and perhaps the Supreme Court in future appeals. A thorough development of the arguments relating to this important issue through adversary presentations by trained counsel will assist the Court in reaching an informed decision.

## Conclusion

In summary, the claim raised in Ms. Miranda's Petition for Writ of Habeas Corpus is important, complex, and likely to succeed on the merits, but only with the application of legal skills that Ms. Miranda does not possess. For these reasons, and pursuant to the CJA, the CJA Plan for the District of Arizona, and applicable caselaw, Ms. Miranda respectfully requests that the Court appoint the

1  Office of the Federal Public Defender for the District of Arizona to represent her
2  in connection with her Petition for Writ of Habeas Corpus.
3
4                              Respectfully submitted on: _____
5
6
7           *Beatrice Miranda*       4/16/09
8           BEATRICE MIRANDA
            Coconino County Detention Facility
9           951 E. Sawmill Rd.
            Flagstaff, AZ  86001
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# FINANCIAL AFFIDAVIT
IN SUPPORT OF REQUEST FOR ATTORNEY, EXPERT OR OTHER COURT SERVICES WITHOUT PAYMENT OF FEE

| IN UNITED STATES | ☐ MAGISTRATE | ☐ DISTRICT | ☐ APPEALS COURT or | ☐ OTHER PANEL (Specify below) |

IN THE CASE OF _____ V.S. _____

FOR _____
AT _____

LOCATION NUMBER ▶

**PERSON REPRESENTED** (Show your full name) ▶ _____

1. ☐ Defendant—Adult
2. ☐ Defendant - Juvenile
3. ☐ Appellant
4. ☐ Probation Violator
5. ☐ Parole Violator
6. ☐ Habeas Petitioner
7. ☐ 2255 Petitioner
8. ☐ Material Witness
9. ☐ Other

**DOCKET NUMBERS**
Magistrate
District Court
Court of Appeals

**CHARGE/OFFENSE** (describe if applicable & check box →)  ☐ Felony  ☐ Misdemeanor

## ASSETS

**EMPLOYMENT**
Are you now employed? ☐ Yes  ☑ No  ☐ Am Self-Employed
Name and address of employer: _____
IF YES, how much do you earn per month? $ _____
IF NO, give month and year of last employment. How much did you earn per month? $ _____
If married is your Spouse employed? ☐ Yes  ☑ No  N/A
IF YES, how much does your Spouse earn per month? $ _____
If a minor under age 21, what is your Parents or Guardian's approximate monthly income? $ _____

**OTHER INCOME**
Have you received within the past 12 months any income from a business, profession or other form of self-employment, or in the form of rent payments, interest, dividends, retirement or annuity payments, or other sources? ☐ Yes  ☑ No
RECEIVED  SOURCES
IF YES, GIVE THE AMOUNT RECEIVED & IDENTIFY THE SOURCES  $ _____

**CASH**
Have you any cash on hand or money in savings or checking accounts? ☐ Yes  ☑ No  IF YES, state total amount $ _____

**PROPERTY**
Do you own any real estate, stocks, bonds, notes, automobiles, or other valuable property (excluding ordinary household furnishings and clothing)? ☐ Yes  ☑ No
VALUE  DESCRIPTION
IF YES, GIVE THE VALUE AND $ DESCRIBE IT

## OBLIGATIONS & DEBTS

**DEPENDENTS**
MARITAL STATUS:
✓ SINGLE
__ MARRIED
__ WIDOWED
__ SEPARATED OR DIVORCED

Total No. of Dependents: **3**

List persons you actually support and your relationship to them:
Nikki Miranda — mother
Daisy Miranda — mother
Jeremy Miranda — mother

**DEBTS & MONTHLY BILLS**
(LIST ALL CREDITORS, INCLUDING BANKS, LOAN COMPANIES, CHARGE ACCOUNTS, ETC.)

| APARTMENT OR HOME: | Creditors | Total Debt | Monthly Paymt. |
|---|---|---|---|
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |

I certify under penalty of perjury that the foregoing is true and correct. Executed on (date) **4/2/09**

SIGNATURE OF DEFENDANT (OR PERSON REPRESENTED) ▶ *Beatrice Miranda*