PASCUA YAQUI TRIBE
COURT OF APPEALS

4:45 pm, Sep 26, 2008

RECEIVED
CLERK OF COURT

IN THE PASCUA YAQUI COURT OF APPEALS

IN AND FOR THE PASCUA YAQUI INDIAN RESERVATION

| | | |
|---|---|---|
| PASCUA YAQUI TRIBE, | ) | APPELLATE CASE NO. CA-08-015 |
| | ) | |
| APPELLEE, | ) | PASCUA YAQUI TRIBAL COURT NO. |
| | ) | CR-08-119 |
| vs. | ) | |
| | ) | |
| MIRANDA, BEATRICE, | ) | |
| | ) | |
| APPELLANT. | ) | |

---

## OPENING BRIEF

---

Nicholas A. Fontana
State Bar No. 014429
PASCUA YAQUI PUBLIC DEFENDER
7474 South Camino de Oeste
Tucson, AZ 85757
(520) 883-5013

Attorney for Appellant

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................... 4

STATEMENT OF THE CASE ............................................................................... 10

STATEMENT OF FACTS .................................................................................... 12

STATEMENT OF THE ISSUES ........................................................................... 19

STANDARD OF REVIEW ................................................................................... 20

ARGUMENT ........................................................................................................ 21

I.    THE COURT'S FAILURE TO PROPERLY ADVISE THE APPELLANT OF HER RIGHTS DEPRIVED HER OF DUE PROCESS OF LAW AS GUARANTEED BY ARTICLE 1, § 1(H) OF THE PASCUA YAQUI CONSTITUTION AND THE INDIAN CIVIL RIGHTS ACT, 25 U.S.C. § 1302(8). ................................................ 21

A.    The court failed to properly advise the Appellant of her rights during all proceedings. ........................................................................................ 21

1.    *Initial Appearance* .............................................................. 26

2.    *Arraignment* ......................................................................... 27

3.    *Pre-Trial Hearing* .............................................................. 30

4.    *Trial* ...................................................................................... 33

5.    *Sentencing* ............................................................................ 35

B.    The lower court's failure to properly advise the Appellant of her rights deprived her of due process of law. ............................................... 36

II.    THE REPEATED ADMISSION OF INADMISSIBLE EVIDENCE DEPRIVED THE APPELLANT OF HER RIGHT TO CONFRONT HER ACCUSERS AND RIGHT TO A FAIR TRIAL AS GUARANTEED BY THE CONSTITUTION OF THE PASCUA YAQUI TRIBE AND THE INDIAN CIVIL RIGHTS ACT ...................... 36

III.   THE COURT'S NEGATIVE INFERENCE TO THE APPELLANT'S INVOCATION OF HER RIGHT TO REMAIN SILENT DEPRIVED HER OF THE RIGHT TO BE FREE FROM COMPULSORY SELF-INCRIMINATION AS GUARANTEED BY THE CONSTITUTION OF THE PASCUA YAQUI TRIBE AND THE INDIAN CIVIL RIGHTS ACT. ........................................................................... 41

IV.   THE COURT ERRED IN EXERCISING JURISDICTION OVER THE APPELLATE DUE TO THE APPELLEE'S FAILURE TO INTRODUCE ANY EVIDENCE THAT THE APPELLANT WAS AN ENROLLED MEMBER OF A FEDERALLY RECOGNIZED INDIAN TRIBE ............................................................ 42

V.    THE LOWER COURT ERRED IN FINDING THE APPELLANT GUILTY OF COUNTS FIVE AND SIX DESPITE THE APPELLEE'S FAILURE TO PROVE EVERY ELEMENT BEYOND A REASONABLE DOUBT ................................. 47

VI.   THE LOWER COURT'S IMPOSITION OF A SENTENCE OF NINE-HUNDRED AND TEN (910) DAYS IMPRISONMENT WAS VIOLATION OF THE INDIAN CIVIL RIGHTS ACT. ........................................................................... 49

    A.   The phrase "any one offense" in the ICRA is ambiguous. ............................................ 50

    B.   The history of the Indian Civil Rights Act ........................................................... 51

    C.   The underlying purposes of the Indian Civil Rights Act. ............................................. 52

    D.   The eight charges against the Appellant were part of a single criminal transaction ..... 54

CONCLUSION ............................................................................................ 57

CERTIFICATE OF SERVICE .......................................................................... 59

**TABLE OF AUTHORITIES**

Cases

*Almendarez-Torres v. United States*, 523 U.S. 224 (1998) ........................................................... 47

*Marshall v. Clark*, 365 A.2d 1202 (Conn. 1976) ........................................................................... 43

*Alumax Mill Prods., Inc. v. Congress Fin. Corp.*, 912 F.2d 996 (8th Cir. 1990) ........................... 43

*Alvarez v. State Taxation & Revenue Dep't, Motor Vehicle Div.*, 971 P.2d 1280 (N.M. App.

    1998) .............................................................................................................................................. 44

*Ami v. Hopi Tribe*, AP-003-89 (1996) .................................................................................... 25, 28

*Ashe v. Swenson*, 397 U.S. 436 (1970) .......................................................................................... 50

*Beck v. Winters*, 407 F.2d 125 (8th Cir. 1969) .............................................................................. 52

*Burgess v. Charlottesville Sav. & Loan Ass'n.* 477 F.2d 40 (4th Cir. 1973) ................................. 43

*City of Philadelphia v. White*, 727 A.2d 627 (Pa. 1999) .............................................................. 43

*Codispoti v. Pennsylvania*, 418 U.S. 506 (1974) ..................................................................... 50, 51

*Coin v. Mowa*, No. AP-005-95 (Hopi 3/23/1997) ......................................................................... 20

*Crawford v. Washington*, 541 U.S. 36 (2004) .......................................................................... 37, 38

*DeWitt v. Skinner*, 232 F. 443 (8th Cir. 1916) .............................................................................. 39

*Duncan v. Louisiana*, 391 U.S. 145 (1968) ................................................................................... 32

*Fiedler v. Clark*, 714 F.2d 77 (9th Cir. 1983) ............................................................................... 43

*Fitzgerald v. Seaboard S.R., Inc.*, 760 F.2d 1249 (10th Cir. 1992), *cert. denied*, 493 U.S. 943

    (1989) ............................................................................................................................................. 43

*Gideon v. Wainwright*, 372 U.S. 335 (1963) ................................................................................. 53

*Griffin v. California*, 380 U.S. 609 (1965) .................................................................................... 41

*Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 5644 (1982) ........................................................ 54

*Group Life & Health Ins. Co. v. Royal Drug Co.*, 440 U.S. 205 (1979) ....................................... 49

*In re Certified Question*, No. 98AC00004 (Hopi 2001) ................................................................. 44

*In re Turrieta*, 356 P.2d 681, 684 (Calif. 1960)............................................................................ 24

*In re Winship*, 397 U.S. 358 (1970) ............................................................................................. 47

*International Longshoremen's Assoc. v. Davis*, 470 So.2d 1215 (Ala. 1985)............................. 44

*Jonah R. v. Carmona*, 446 F.3d 1000 (9th Cir. 2003) .............................................................. 50, 51

*Lefevre v. Mashantucket Pequot Tribe*, 1 Mash. 1 (1992)........................................................... 43

*Lewis v. United States*, 518 U.S. 322 (1996) ................................................................................ 50

*Liberty Mut. Ins. Co. v. Ward Trucking Corp.*, 48 F.3d 742 (3rd Cir. 1995) ............................... 43

*Louisville & N.R. Co. v. Tally*, 83 So. 114 (Ala. 1919) ............................................................... 43

*Martin v. Hunter's Lessee*, 14 U.S. (1 Wheat.) 304 (1816) ........................................................ 43

*Morrison v. Bestler*, 387 S.E.2d 753 (Va. 1990) ......................................................................... 43

*Navajo Nation v. Rodriguez*, No. SC-CR-03-04 (2004) .............................................................. 28

*Oliphant v. Suquamish Indian Tribe*, 435 U.S. 191 (1978) ........................................................ 44

*Pascua Yaqui Tribe v. Alma Soto*, CA-06-010 (2007)................................................................. 20

*Pascua Yaqui Tribe v. Celestine Molina*, CA-04-002 (2006)................................................. 23, 28

*Pascua Yaqui Tribe v. Jerry Ramirez*, CA-02-003 (2006) ................................................... passim

*People v. Stenson*, 694 N.E.2d 204 (Ill. App. 1998)................................................................... 44

*Pinner v. Pinner*, 234 S.E.2d 633 (N.C. App. 1977) .................................................................. 42

*R. v. Tran*, 156 CCC(3rd) 1 (Ontario 2001)................................................................................. 40

*R. v. Travers*, 154 CCC(3d) 426 (Nova Scotia 2001).................................................................. 41

*Ramos v. Pyramid Tribal Court*, 621 F.Supp. 967 (D. Nev. 1985) ............................................. 56

*Reed v. State*, 187 S.W.2d 660 (Tex. 1944)................................................................................ 43

*Richardson v. United States*, 526 U.S. 813 (1999) ........................................................ 47

*Robbins v. Small*, 371 F.2d 793 (1st Cir. 1967), *cert. denied*, 386 U.S. 1033 (1967) .................. 39

*Spears v. Red Lake*, 363 F.Supp. 2d 1176 (D.Minn. 2005). ....................................... 50, 53, 55, 56

*Springer v. Shavender*, 23 S.E. 976 (N.C. 1896) ........................................................... 43

*St. Cloud v. United States*, 702 F.Supp 1456 (D.S.D. 1988) ........................................... 45

*State ex rel. Lawrence Dev. Co. v. Weir*, 463 N.E.2d 398 (Ohio App. 1983) ............................. 43

*State Farm Mut. Auto. Ins. Co. v. Narvaez*, 149 F.3d 1269 (10th Cir. 1998) ............................. 43

*State v. Kwak*, 909 P.2d 1112 (Haw. 1995) ................................................................. 42

*State v. Vaughan*, 33 S.W.2d 512 (Ark. 2000) ............................................................. 42

*Stephens v. Hartly*, 2 Mont. 504 (1876) ................................................................... 43

*Thomas v. Colville Confederated Tribes*, 1 CCAR 135 (1990) .............................................. 28

*Thomas v. Coquille Indian Tribe*, No. C03-001 (2004) ..................................................... 43

*Timmons v. McCauley*, 27 S.W.3d 437 (Ark. App. 2000) ................................................... 43

*Trottier v. Bird*, 635 N.W.2d 157 (N.D. 2001) ............................................................ 43

*Turner v. Malone*, 24 S.C. 398 (1898) .................................................................... 43

*Tustin v. Gaunt*, 4 Ore. 305 (1873) ...................................................................... 43

*United State v. Broncheau*, 587 F.2d 1260 (9th Cir. 1979), *cert. denied*, 444 U.S. 859 (1979).... 45

*United States ex rel. Williams v. Twomey*, 510 F.2d 634 (7th Cir. 1975), *cert. denied sub nom*,

    *Sielaff v. Williams*, 423 U.S. 876 (1975) ........................................................... 57

*United States v. 313.34 Acres of Land*, 923 F.2d 698 (9th Cir. 1991) ..................................... 49

*United States v. Bruce*, 394 F.3d 1215 (9th Cir. 2004) .................................................... 45

*United States v. Lara*, 541 U.S. 193 (2004) .............................................................. 44

*United States v. Lawrence*, 52 F.3d 150 (8th Cir. 1995). ............................................... 43, 45

*United States v. Robinson*, 94 F.3d 1325 (9th Cir. 1996) ................................................................ 20

*United States v. Ron Pair Enters., Inc.*, 489 U.S. 235 (1989) ...................................................... 50

*Waters v. Colville Confederated Tribes*, 3 CCAR 35 (1996) .......................................................... 38

*Weatherspoon v. Allstate Ins. Co.*, 89 P.3d 1277 (Ore. App. 2004) .......................................... 43

*Wenzel v. Wenzel*, 283 S.W.2d 882 (Mo.App. 1955)...................................................................... 43

*Wilson v. Ransom*, 446 N.W.2d 6 (Neb. 1989)................................................................................ 42

*Zelson v. Thomforde*, 412 F.2d 56 (3rd Cir. 1969) ......................................................................... 43

**Statutes**

18 U.S.C. § 1153............................................................................................................................ 53

25 U.S.C. § 1301(2) ....................................................................................................................... 44

25 U.S.C. § 1302............................................................................................................... passim

3 P.Y.T.C. § 1-1-20......................................................................................................................... 44

3 P.Y.T.C. § 1-3-100........................................................................................................................ 22

4 P.Y.T.C. § 1-150........................................................................................................................... 47

4 P.Y.T.C. § 1-200........................................................................................................................... 47

4 P.Y.T.C. § 1-260........................................................................................................................... 47

4 P.Y.T.C. § 1-305........................................................................................................................... 48

4 P.Y.T.C. § 1-400........................................................................................................................... 53

5 P.Y.T.C. § 7-50............................................................................................................................. 23

P.L. 90-284 § 202, 82 Stat. 77-78 (April 11, 1968)...................................................................... 52

P.L. 99-570 § 4217, 100 Stat. 3207-146 (October 27, 1986) ........................................................ 52

**Other Authorities**

114 Cong. Rec. 5836 (1968) ................................................................................................ 52

Burnett, *An Historical Analysis of the 1968 "Indian Civil Rights" Act*, 9 Harv.J. on Legis. 557

(1972) .......................................................................................................................... 51

Lazarus, *An Indian Bill of Rights*, 45 North Dakota L. Rev. 337 (1969). ...................... 49

Rice, *There and Back Again-An Indian Hobbits Holiday "Indians Teaching Indian Law,"* 26

N.M.L.Rev. 169 (1996) .............................................................................................. 44

**Rules**

3 P.Y.T.R.A.P. 8 ............................................................................................................. 35

3 P.Y.T.R.A.P. 9 ............................................................................................................. 46

3 P.Y.T.R.Civ.P. 14 ........................................................................................................ 44

3 P.Y.T.R.Crim.P. 15 ...................................................................................................... 22

3 P.Y.T.R.Crim.P. 18 .................................................................................................. 22, 23

3 P.Y.T.R.Crim.P. 19 .................................................................................................. 22, 26

3 P.Y.T.R.Crim.P. 21 .................................................................................................. 22, 26

3 P.Y.T.R.Crim.P. 30 ........................................................................................ 22, 31, 33, 44

3 P.Y.T.R.Crim.P. 31 .................................................................................................. 22, 27

3 P.Y.T.R.Crim.P. 33 ...................................................................................................... 22

3 P.Y.T.R.Crim.P. 43 ...................................................................................................... 33

3 P.Y.T.R.Crim.P. 44 ...................................................................................................... 23

3 P.Y.T.R.Crim.P. 48 .................................................................................................. 23, 33

3 P.Y.T.R.Evid. 1 *et seq.* ............................................................................................ 33, 46

3 P.Y.T.R.Evid. 31 .......................................................................................................... 38

3 P.Y.T.R.Evid. 36.................................................................................... 36

3 P.Y.T.R.Evid. 37.................................................................................... 36

3 P.Y.T.R.Evid. 6...................................................................................... 39

3 P.Y.T.R.Evid. 7...................................................................................... 40

American Bar Association Model Rule of Professional Conduct 3.8 ........................................... 29

**Treatises**

3 Wigmore, Evidence § 769 (3rd ed. 1940).............................................................. 38

BLACK'S LAW DICTIONARY (6th Ed. 1990). ................................................................ 38, 42

Robert N. Clinton et al., AMERICAN INDIAN LAW (3rd ed. 1991)........................................... 44

**Constitutional Provisions**

Art. I, § 1(d), Constitution of the Pascua Yaqui Tribe................................................. 41

Art. I, § 1(f), Constitution of the Pascua Yaqui Tribe ................................................ 31

Art. I, § 1(j), Constitution of the Pascua Yaqui Tribe................................................. 32

Art. VIII, § 5, Constitution of the Pascua Yaqui Tribe................................................. 35

Article I, § 1 Constitution of the Pascua Yaqui ...................................................... 21

Article I, § 1(f), Constitution of the Pascua Yaqui Tribe............................................. 37

Article I, § 2, Constitution of the Pascua Yaqui Tribe................................................. 22

Article VIII, § 2, Constitution of the Pascua Yaqui Tribe............................................. 43

*U.S. Const. Amend. V*.................................................................................. 50

## STATEMENT OF THE CASE

On January 26, 2008, the Tribe filed a criminal complaint against Appellant Beatrice Miranda charging her with two counts of aggravated assault, two counts of endangerment, two counts of threatening or intimidating, and two counts of disorderly conduct. [*PYT v. Beatrice Miranda*, Pascua Yaqui Trial Court Record, document 38, hereinafter "R. 38"]. Ms. Miranda's initial appearance was held on January 26, 2008. [R. 36]. She was not represented by counsel. [*Id.*]. The court determined that there was probable cause to support the charges against Ms. Miranda and ordered that she be held in custody pending the posting of a bond in the amount of one-thousand five-hundred ($1,500.00) dollars. [*Id.*].

Ms. Miranda was arraigned on February 4, 2008. [R. 34]. She was in-custody and not represented by counsel. [*Id.*]. Ms. Miranda attempted to enter a plea of guilty to the charges; however, the court rejected her guilty plea due to the lack of a factual basis. [*Id.*]. The court entered not guilty pleas on behalf of Ms. Miranda and set the matter for a pre-trial hearing.

The pre-trial hearing was held on March 12, 2008. [R. 26]. Ms. Miranda, in-custody and not represented by counsel, appeared via video conference. [*Id.*]. The matter was set for trial on April 21, 2008. [*Id.*].

On March 12, 2008, the Tribe filed an executed plea agreement with the court. [R. 25]. The court ordered that the proposed plea agreement be heard on April 21, 2008. [R. 23]. On March 25, 2008, the court received a letter from Ms. Miranda indicating that she wished to withdraw from the proposed plea agreement. [R. 22]. The court vacated the change of plea hearing and set the matter for trial on April 21, 2008. [R. 21].

At the time of trial, Ms. Miranda appeared in-custody, and once again, without legal counsel. [Record 12]. The court found Ms. Miranda guilty on all eight counts of the complaint. [*Id.*]. Ms. Miranda's sentencing was scheduled for May 19, 2008. [*Id.*].

At the time of sentencing, Ms. Miranda was not represented by legal counsel. [R. 6]. The court sentenced her to a total of nine-hundred and ten (910) days in prison, with credit for the one-hundred and fourteen days she had already served. [*Id.*].

The Pascua Yaqui Public Defender entered its notice of appearance on behalf of Ms. Miranda on June 10, 2008. [R. 3]. Ms. Miranda's notice of appeal was filed on June 26, 2008. [R. 1].

Ms. Miranda is incarcerated at the McKinley County Adult Detention Center in Gallup, New Mexico.

## STATEMENT OF FACTS

On January 26, 2008, the Tribe filed a criminal complaint against Appellant Beatrice Miranda charging her with two counts of aggravated assault, two counts of endangerment, two counts of threatening or intimidating, and two counts of disorderly conduct. [R. 38]. According to the affidavit submitted in support of the complaint, when Ms. Miranda was arrested at 10:56 a.m., she appeared to be "extremely intoxicated." [R. 1]. She was taken before the court approximately twelve-hours later for her initial appearance. [R. 37-38]. During the initial appearance, Ms. Miranda was not represented by legal counsel. [R. 38]. The lower court advised her of her rights as follows:

> The Court:   The Pascua Yaqui Tribal Court is now in session in the matter of Pascua Yaqui Tribe versus Beatrice Miranda, Docket number CR-08-119. Today's date is January 26, 2008. (Inaudible) for this time, (inaudible). (Inaudible) Counsel, and I scheduled an additional hearing. Let me see I now will advise you of your rights. You have the right to remain silent. Anything you say may be used against you. You have the right to counsel at your own expense, and you have the right to (inaudible) probable cause in this phase of the proceedings. Do you understand your rights?

Ms. Miranda: Yes.

[Transcript A at 2]. The court determined that probable cause existed and ordered that she be held pending the posting of a bond in the amount one-thousand five-hundred ($1,500.00) dollars. [R. 36].

Ms. Miranda appeared for her arraignment, without counsel, on February 4, 2008. [R. 34]. At the arraignment, she was advised of her rights as follows:

> And Miss Miranda, I will now advise you of your rights. You have the right to remain silent. Anything you say will be used against you. You have the right to legal counsel at your own expense. You have the right to (inaudible). Miss

> Miranda, you have the right to cross-examine witnesses and evidence presented by the Tribe, and the right to present witnesses and evidence in your behalf. You have the right to know the charges against you, and you have the right to appeal to the Pascua Yaqui Court of Appeals. Do you understand your rights?

[Transcript B at 2, lines 15-25]. Ms. Miranda attempted to enter a plea of guilty to the charges; however, the court rejected her guilty plea due to the lack of a factual basis. [R. 34]. The court entered not guilty pleas on behalf of Ms. Miranda and set the matter for a pre-trial hearing. The matter was set for a pre-trial hearing on March 12, 2008. [Id.].

At the pre-trial hearing on March 12, 2008, Ms. Miranda again appeared without legal counsel. [R. 26]. She was advised of her rights as follows:

> And Ms. Miranda, I will advise you of your rights. You have the right to remain silent. Anything you say may be used against you. You have the right to legal counsel at your own expense. You have the right to cross examine the witnesses, and (inaudible) about the Tribe and the right to examine witnesses in advantage on your behalf. You have the right to know the allegations against you, and you have the right to appeal to the Pascua Yaqui Court of Appeals. Do you understand your rights?

[Transcript C at 2]. Neither party made any motions to the court and the case was set for trial on April 21, 2008.

On March 12, 2008, the parties submitted an executed plea agreement. [R. 25]. The court set the matter for a change of plea hearing on April 21, 2008. [R. 23]. On March 14, 2008, Ms. Miranda sent a letter to the court stating that she wished to withdraw from the plea agreement. [R. 24]. The court entered an order vacating the change of plea hearing and resetting the matter for trial. [R. 21].

Ms. Miranda was not represented by counsel at her trial on April 21, 2008. [R. 12]. At the beginning of the trial, the court advised the defendant of her rights as follows:

- 13 -

And Ms. Miranda, I will advise you of your rights.  You have the right to remain silent.  Anything you say may be used against you.  You have the right to you own counsel at your own expense.  You have the right to a hearing.  You have the right to cross examine witnesses and evidence presented by the Tribe, and the right to present witnesses and evidence in your behalf.  You have the right to know the charges against you, and you have the right to appeal to the Pascua Yaqui Court of Appeals.  Do you understand your rights?

[Transcript D at 2].

The Tribe did not make an opening statement and called its first witness, Officer Jose Montaño.  [Transcript D at 3].  The witness testified that he had been employed as a police officer for three years and that he had received twenty weeks of training at the police academy and attended training post-academy.  [Transcript D at 3-4].  There was no testimony regarding the specifics of the training other than that he had received training on writing reports.  [Transcript D at 4].  The witness testified that he was dispatched to an address on Koni Street to investigate a report that an unknown female armed with a knife, wearing dark clothing with long sleeves, was chasing another female.  [Transcript D at 5].  When he arrived at the scene, he was informed that the suspect was seen running toward Toroko Vampo.  [*Id.*].  The witness proceeded to Toroko Vampo and in the area of 7600 Toroko Vampo, sighted a female wearing a sweater with long sleeves.[1]  [*Id.*].  The witness immediately instructed the female to stop so that he could place handcuffs on her.  [Transcript D at 5-6].  According to the witness, the suspect was "pretty much out of control . . . she was extremely intoxicated . . . she was yelling . . . resisting."  [Transcript D at 6].

---

[1] The distance from the location of the officer's original response to the location on Toroko Vampo is approximately three-tenths of a mile.

- 14 -

The witness testified that the female suspect was transported to the detention center and turned over to Detention Officer McKenna. [Transcript D at 7]. The witness also testified that "I went back to the Detention Center and, uh, Detention Officer McKenna told me that he located a, a knife on Beatrice's person." [Transcript D at 7]. The officer took custody of the knife and showed it to the reporting witnesses who "immediately recognized the knife as the weapon used." [Transcript D at 8]. The witness also testified that:

> I made contact with the victims, they said that, uh, the female subject with the long blue sleeved shirt, uh, was chasing them with the knife, pointed the knife at them, uh, called her names, uh, something about I'm going to kill you fucking bitches and, uh, uh, you're laughing at me and something like that.

[Transcript D at 8].

The prosecutor then showed the witness an envelope marked as "Tribe's Exhibit 2." [Transcript D at 9]. The witness testified that he recognized the exhibit as the evidence bag used for the folding knife found on Ms. Miranda's person, that he had personally packaged the evidence, transported it to court, and that no one other than he or the evidence technician had access to the exhibit. [Transcript D at 9-10]. The prosecutor then asked "Is that the one that's found on, uh, the Defendant?" The witness answered, "Yes." [Transcript D at 10]. The exhibit was then admitted into evidence by the court. [Transcript D at 11]. The prosecutor then asked the witness about the other bag in the evidence envelope. [Transcript D at 11]. The witness responded "Uh, this is a baggie that was found on her person and it's a baggie with, uh, uh, white residue on it, unknown, uh, not enough to test." [Transcript D at 11]. The prosecutor solicited testimony that in the witness's experience, the knife could be used to inflict deadly injury on a

- 15 -

person. [Transcript D at 11]. Ms. Miranda did not cross-examine the witness. [Transcript D at 12].

The Tribe called two more witnesses before resting its case. [Transcript D at 12-33]. Ms. Miranda did not cross-examine either witness. [Transcript D at 23, 33]. After the Tribe rested its case, the court proceeded as follows:

| The Court: | Ms. Miranda, do you have any witnesses that you wish to call at this time?  Do you wish to testify? |
| Ms. Miranda: | (inaudible). |
| The Court: | And the Court will also inform you that your refusal to testify is highly (inaudible) on the Court by, uh, (inaudible). |

[Transcript D at 33]. Ms. Miranda did not call any witnesses or testify on her own behalf. [Transcript D at 33].

At the conclusion of the thirty-five minute trial, the court found Ms. Miranda guilty of all charges. [R. 12; Transcript D at 35-36]. When the court asked Ms. Miranda if there was any reason to delay sentencing, Ms. Miranda indicated that she wished to be sentenced immediately. [Transcript D at 36]. However, the Tribe requested that the court order the completion of a pre-sentence and a delay in sentencing. [Transcript D at 36]. The court ordered the completion of a pre-sentence report and set the matter for sentencing on May, 19, 2008. [Id.].

On May 16, 2008, the Office of Probation and Parole filed the pre-sentence investigative report with the court. [R. 7]. There is no record of whether a copy of the report was served on Ms. Miranda prior to the sentencing hearing. [Id.]. The report included a section titled "criminal history" which purported to provide Ms. Miranda's prior criminal history. The report stated that a search of the National Crime Information Center database indicated that Ms. Miranda did not

- 16 -

have a criminal history. [*Id.*]. However, the report provides that a search "conducted with Pascua Yaqui Tribe's Office of Probation & Parole and the Pascua Yaqui Tribe's Office of the Prosecutor" and lists five alleged criminal offenses. [*Id.*]. The list includes a case number and offense for each alleged offense. [*Id.*]. It does not include the disposition of the alleged offenses and copies of any court records documenting the alleged offenses. [*Id.*]. The section of the pre-sentence report titled "Defendant's Statement" indicated that the probation officer failed to speak with Ms. Miranda prior to submitting the pre-sentence report. [*Id.*]. Finally, citing Ms. Miranda's alleged prior criminal history and alleged failure to comply with probation, the report recommended that Ms. Miranda be incarcerated for a period of nine-hundred and ten (910) days. [*Id.*].

Ms. Miranda's sentencing hearing was held on May 19, 2008. [R. 6]. At the beginning of the hearing, the court advised her of her rights as follows:

> And Ms. Miranda, I will advise you of your rights, rights will apply to both matters. You have the right to remain silent. Anything you say may be used against you. You have the right to legal counsel at your own expense. You have the right to a hearing. You have the right to cross examine witnesses and evidence presented by the Tribe, and the right to present witnesses and evidence in your behalf. You have the right to know the charges and allegations against you, and in the sentencing matter, you have the right to appeal to the Pascua Yaqui Court of Appeals . . . Do you understand your rights?

After Ms. Miranda was advised of her rights, the probation officer who prepared the pre-sentence report recommended that Ms. Miranda be incarcerated for a period of nine-hundred and ten (910) days. [Transcript E at 3-4]. The Tribe concurred with the recommendation. [Transcript E at 4-5]. After Ms. Miranda asked for a lesser sentence, the probation officer argued that her alleged criminal history justified the recommendation. [Transcript E at 5-6]. Before pronouncing

sentence on Ms. Miranda, the court stated "after hearing from the probation officer and the Tribe regarding the history of the Defendant.  And the Court does find that the Defendant does have a history of failures to appear, uhm, and failure to comply with conditions of probation and other orders set by the Court."  [Transcript E at 7].  The court then sentenced Ms. Miranda to nine-hundred and ten (910) days with credit for the one-hundred and fourteen (114) days she had served while awaiting trial.  [R. 6; Transcript E at 7-10].

## STATEMENT OF THE ISSUES

1.  Whether the court's failure to properly advise the Appellant of her rights, as guaranteed by the Constitution of the Pascua Yaqui Tribe and the Indian Civil Rights Act, deprived her of due process of law.

2.  Whether the repeated admission of inadmissible evidence deprived the Appellant of her right to confront her accusers and right to a fair trial as guaranteed by the Constitution of the Pascua Yaqui Tribe and the Indian Civil Rights Act.

3.  Whether the court's negative inference to the Appellant's invocation of her right to remain silent deprived her of her right to be free from self-incrimination as guaranteed by the Constitution of the Pascua Yaqui Tribe and the Indian Civil Rights Act.

4.  Whether the court erred in exercising jurisdiction over the Appellant due to the Appellee's failure to introduce any evidence that the Appellant is an enrolled member of a federally recognized Native American tribe.

5.  Whether the lower court erred in finding the guilty on counts five and six of the complaint despite the Appellee's failure to prove every element of the offense beyond a reasonable doubt.

6.  Whether the sentence of nine-hundred and ten (910) days violates the Indian Civil Rights Act.

## STANDARD OF REVIEW

The Pascua Yaqui Constitution and Pascua Yaqui Judicial Titles and Codes are silent regarding the standards of review to be applied by the Pascua Yaqui Court of Appeals. In other jurisdictions, appellate courts give great deference to the factual determinations of trial courts because of the trial court's ability to observe the demeanor and evaluate the credibility of witnesses. *Coin v. Mowa*, No. AP-005-95 (Hopi 3/23/1997); *United States v. Robinson*, 94 F.3d 1325, 1327 (9th Cir. 1996) (findings of fact reviewed for clear error). Questions of law are subject to *de novo* review on appeal. *Pascua Yaqui Tribe v. Alma Soto*, CA-06-010, at 8 (2007).

<u>ARGUMENT</u>

I.   THE COURT'S FAILURE TO PROPERLY ADVISE THE APPELLANT OF HER
     RIGHTS DEPRIVED HER OF DUE PROCESS OF LAW AS GUARANTEED BY
     ARTICLE 1, § 1(H) OF THE PASCUA YAQUI CONSTITUTION AND THE INDIAN
     CIVIL RIGHTS ACT, 25 U.S.C. § 1302(8).

     A.   <u>The court failed to properly advise the Appellant of her rights during all
          proceedings.</u>

          The rights of defendants in criminal prosecutions in the Pascua Yaqui Tribal

     Court are set forth in Article I of the Constitution of the Pascua Yaqui Constitution and

     the Indian Civil Rights Act (ICRA), which is codified at 25 U.S.C. § 1302. The

     provisions of Article I are essentially identical to the language contained in the ICRA.

          Article I, § 1 of the Pascua Yaqui Constitution provides that in exercising its

     powers of self-government, the Tribe shall not:

          a.   make or enforce any law prohibiting the free exercise of religion, or
               abridging the freedom of speech, or of the press, or the right of the people
               peaceably to assemble and petition for redress of grievances;

          b.   violate the right of the people to be secure in their persons, houses, papers,
               and effects against unreasonable search and seizures, nor issue warrants
               but upon probable cause, supported by oath or affirmation, and
               particularly describing the place to be searched and the person or thing to
               be seized;

          c.   subject any person for the same offense to be twice put in jeopardy;

          d.   compel any person in a criminal case to be a witness against
               himself/herself;

          e.   take any private property for public use without just compensation;

          f.   deny to any person in a criminal proceeding the right to a speedy and
               public trial, to be informed of the nature and cause of the accusation, to be
               confronted with witnesses against them, to have compulsory process for

obtaining witnesses in their favor, and at their own expense to have the
assistance of counsel for their defense;

g.    require excessive bail, impose excessive fines, inflict cruel and unusual
punishment, and in no event impose for conviction of one (1) offense any
penalty or punishment greater than imprisonment for a term of one (1)
year or a fine of $5,000 or both;

h.    deny any person within its jurisdiction the equal protection of its laws or
deprive any person of liberty or property without due process of law;

i.    pass any bill of attainder or *ex post facto* law; or

j.    deny to any person accused of any offense punishable by imprisonment
the right, upon request, to a trial by jury of not less than six (6) persons.

Section 2 of Article I provides that the privilege of the writ of habeas corpus shall be

available to any person in a court of the United States to test the legality of their detention

by order of the Pascua Yaqui Tribe. *See also* 25 U.S.C. § 1303.

In addition to the rights guaranteed by the Constitution of the Pascua Yaqui Tribe

and the ICRA, defendants have rights which are guaranteed by the rules of the court and

statute. For example, a defendant has the right to challenge a judge for cause. 3 P.Y.T.C.

§ 1-3-100, the right to be informed of certain rights immediately upon arrest, 3

P.Y.T.R.Crim.P. 15, the right to be taken before the court within twenty-four hours of

arrest, 3 P.Y.T.R.Crim.P. 18, the right to release on his or her own recognizance, 3

P.Y.T.R.Crim.P. 19, the right to seek modification of conditions of release, 3

P.Y.T.R.Crim.P. 21, and the right to file written or make oral motions to suppress

evidence, exclude unfairly prejudicial evidence, exclude witnesses from the courtroom,

or set aside a complaint. 3 P.Y.T.R.Crim.P. 30. Although a defendant has only the right

to counsel at his or her own expense, the right to be represented specifically includes the

right to consult with counsel as soon as feasible after being taken into custody. 3
P.Y.T.R.Crim.P. 31. A defendant who is held in custody has the right to be tried within
one-hundred and twenty (120) days from the date of the initial appearance or within
ninety (90) days of arraignment. 3 P.Y.T.R.Crim.P. 33. No later than ten days after
arraignment, a defendant has the right to disclosure material from the prosecution. 3
P.Y.T.R.Crim.P. 38; *Pascua Yaqui Tribe v. Celestine Molina*, CA-04-002 (2006). A
defendant has the right to a trial by jury; however, the request must be made in writing no
later than thirty days before the trial date. 3 P.Y.T.R.Crim.P. 44(A). If convicted at trial,
a defendant has the right to move for a new trial. 3 P.Y.T.R.Crim.P. 48. In juvenile
matters, a child must be informed the he or she has the right to remain silent, that
anything the child says may be used against them, of the right to have a parent or
guardian present during questioning, and the right to an attorney or advocate at his own
expense and that a tribal advocate or help from Southern Arizona Legal Aid may be
available. 5 P.Y.T.C. § 7-50.

Pascua Yaqui Rule of Criminal Procedure 18 provides that at a defendant's initial
court appearance, "the judge shall inform the defendant of his or her rights" and "inform
the defendant of his or her rights (sic) to counsel at defendant's own expense and the
right to remain silent." Rule 24 provides that at an arraignment, before the accused is
required to plead to any criminal charge, the judge shall:

> (A)   Advise the accused that he or she has the right to remain silent; to
> be tried by a jury of accused of a crime which is punishable by
> imprisonment; and to be represented by counsel at his or her own
> expense; and that the arraignment will be postponed if the accused

desires to consult with counsel and waives arraignment time requirements; and

(B)   Read to the accused, and determine that he or she understands the complaint, the section of the Tribal Code which he or she is charged with violating, including the maximum authorized penalty.

3 P.Y.T.R.Crim.P. 24. It is clear that these rules are intended to require the trial court to properly advise a defendant of his or her rights as guaranteed by the tribal constitution, Indian Civil Rights Act, and laws of the Pascua Yaqui Tribe. However, the efficacy of these rules is only as meaningful as the manner of their execution. As one court observed, "the court is bound to exercise the utmost diligence in protecting the constitutional rights of a defendant who, through her ignorance, lack of education and training is unable to adequately defend herself, and is not in a position to receive assistance from other sources." *In re Turrieta*, 356 P.2d 681, 684 (Calif. 1960).

In *Pascua Yaqui Tribe v. Jerry Ramirez*, CA-02-003 (8/25/06), this Court recognized that the Constitution of the Pascua Yaqui Tribe granted a number of rights to defendants in criminal cases. The Court held that the trial judge should explain all of these rights thoroughly, and in layman's terms, to all defendants who appear for arraignment. *Ramirez* at 7. This Court also instructed that after rights have been explained, the trial court should give a form listing the rights to defendants, and that defendants should sign the form indicating that they understand their rights.[2] *Id.* The

---

[2] The Court appears to have been attempting to instruct the lower court to implement the use of a written notice of legal rights form similar to that used by the courts of the Hopi

Court also made it emphatically clear that a trial judge must explain to all defendants, on the record, at least the following rights:

1. the right not to be a witness against himself or herself;

2. the right to a speedy and public trial;

3. the right to be informed of the nature and cause of the accusation;

4. the right to be confronted with the Tribe's witnesses against him or her;

5. the right to compulsory process for obtaining witnesses in his or her favor;

6. the right to have assistance of counsel for defense at his or her own expense;

7. the right to a jury trial of not less than (6) person if the statute permits imprisonment and that the request for a jury trial should be made at arraignment or as soon as possible after arraignment.

*Ramirez* at 7-8.  In regards to the right to counsel, this Court made it clear that the mere recitation of the phrase was not acceptable.   This Court ordered that:

> the trial judge *must explain the resources the tribe has available for obtaining free counsel (including public defender's office)* and *give the defendant a list of members of the Pascua Yaqui bar who charge for their services.*  The trial judge should advise the defendant to immediately begin searching for counsel and keep a record of attempts made.  The trial judge should *advise the defendant of the possible consequences of self-representation at trial.*

---

Tribe. *See Ami v. Hopi Tribe*, AP-003-89 (1996).  Unfortunately, the lower court has made no effort to implement the use of a legal rights form.

*Id.* at 8 (emphasis added).  Unfortunately, the record reveals that the trial court failed to properly advise Ms. Miranda of her rights at the initial appearance, arraignment, pre-trial hearing, trial and sentencing.

1.     *Initial Appearance*

According to the affidavit submitted in support of the complaint, when Ms. Miranda was arrested at 10:56 p.m., she appeared to be "extremely intoxicated." [R. 1].  Approximately twelve-hours later, she was taken to court for her initial appearance.  [R. 37-38].  During the initial appearance, she was not represented by legal counsel.  [R. 38].

The court advised her that she had the right to remain silent, that anything she said may be used against her, and of her right to counsel at her own expense.  [Transcript A at 2].  Ms. Miranda indicated that she understood these rights.  [*Id.*].  It also appears that the court advised Ms. Miranda that she had the right to challenge whether there was probable cause to support the allegations against her.  [*Id.*].

Pascua Yaqui Rule of Criminal Procedure 18 requires the court to "inform the defendant of his or her rights" and specifically requires the court to inform a defendant of the right to counsel at his or her own expense and of the right to remain silent.   A superficial examination of the initial proceeding would possibly conclude that the lower court complied with the legal requirements of Rule 18; however, closer

examination of Ms. Miranda's initial appearance reveals significant errors.

First, the court was in possession of the affidavit submitted in support of the criminal complaint which stated that Ms. Miranda was "extremely intoxicated" at the time of her arrest approximately twelve hours earlier. Despite this fact, the court made no effort whatsoever to determine whether Ms. Miranda's cognitive functions were still impaired by the consumption of alcohol. The court advised her of the right to remain silent, but failed to advise Ms. Miranda of the right to release on his or her own recognizance, 3 P.Y.T.R.Crim.P. 19, or the right to seek modification of conditions of release, 3 P.Y.T.R.Crim.P. 21. Although the court informed Ms. Miranda that she had the right to counsel at her own expense, the court failed to advise her that the right to be represented specifically included the right to consult with counsel as soon as feasible after being taken into custody. *See* 3 P.Y.T.R.Crim.P. 31. No mention was made of the fact that the Tribe maintains a Public Defender, nor did the court provide Ms. Miranda with a list of attorneys and advocates certified to practice in the tribal court.

2.    *Arraignment*

This Court and others have recognized that due process requires that a defendant in a criminal case be properly advised of his or her rights. *Ramirez*, CA-02-003 at 7; *Navajo Nation v. Rodriguez*, No. SC-CR-03-04

- 27 -

(2004) (holding Navajo fundamental principle of *hazhó'ógo* requires a patient, respectful discussion with a suspect explaining his or her rights before a waiver is valid); *Ami v. Hopi Tribe*, No. AP-003-89 (1996); *Thomas v. Colville Confederated Tribes*, 1 CCAR 135 (1990). Pascua Yaqui Rule of Criminal Procedure 24 requires the court to inform a defendant of the right to remain silent, to be tried by a jury, to be represented by counsel at his or her own expense, and of the right to continue an arraignment for the purpose of seeking legal counsel. The rule also requires the court to read the complaint and determine that the defendant understands the complaint, the sections of the criminal code alleged to have been violated, as well as the maximum criminal penalty. 3 P.Y.T.R.Crim.P. 24(B).

At the arraignment, Ms. Miranda was advised of her right to remain silent and informed that "anything you say will be used against you." [Transcript B at 2]. She was told that she had the right to counsel at her own expense, but she was not provided with information regarding the Office of the Public Defender or given a list of attorneys certified to practice in Pascua Yaqui Tribal Court [*Id*]. The record reveals that she was informed of her right to cross-examine witnesses and evidence presented by the Tribe, but was not informed that the Tribe had an affirmative obligation to disclose materials within ten days of her arraignment. *See Molina*, CA-04-002 at 3. Ms. Miranda was informed of

- 28 -

right to present witnesses in her defense, but not given any information regarding the methods for obtaining subpoenas for witnesses. [*Id.*]. She was advised of the right to know the charges against her, but was not told the maximum penalty authorized by law. The court failed to advise Ms. Miranda that she had the right to file written or make oral motions to suppress evidence, exclude unfairly prejudicial evidence, exclude witnesses from the courtroom, or set aside the complaint. The court also failed to use a written advisement of rights form.

The court's failure to properly advise Ms. Miranda of her rights at her arraignment deprived her of due process of law as guaranteed by the Constitution of the Pascua Yaqui Tribe and the Indian Civil Rights Act. The court's failure to properly advise Ms. Miranda of her rights is especially chilling in light of the fact that Ms. Miranda attempted to enter guilty pleas to the charges against her without complete knowledge of her rights or of the maximum authorized penalty. [Transcript B at 4-5]. But for the fact that Ms. Miranda was not able to provide the court with a factual basis, the guilty pleas would doubtless have been accepted by the court despite the obvious violation of Ms. Miranda's right to due process of law.[3] [Transcript B at 6]. There is no question that the court's failure to

---

[3] Although the lower court's failure to properly advise Ms. Miranda of her rights is disturbing, the prosecutor's failure to take any remedial action is clearly