IN THE PASCUA YAQUI COURT OF APPEALS

IN AND FOR THE PASCUA YAQUI INDIAN RESERVATION

PASCUA YAQUI TRIBE,             ) APPELLATE CASE NO. CA-08-015
                                )
        Appellee,                ) PASCUA YAQUI TRIBAL COURT NO.:
                                 ) CR-08-119
        vs.                      )
                                 )
MIRANDA, BEATRICE,               )
                                 )
        Appellant.               )

PASCUA YAQUI TRIBE
COURT OF APPEALS

3:00 pm, Feb. 4, 2009

RECEIVED
CLERK OF COURT

## REPLY BRIEF

Nicholas A. Fontana
State Bar No. 014429
PASCUA YAQUI PUBLIC DEFENDER
7474 South Camino de Oeste
Tucson, AZ 85757
(520) 883-5013

Attorney for Appellant

# **TABLE OF CONTENTS**

**TABLE OF AUTHORITIES** .................................................................................. 3

**STATEMENT OF FACTS** .................................................................................... 4

**STANDARD OF REVIEW** ................................................................................... 5

**ARGUMENT** ......................................................................................................... 6

    I.    THE PROCEEDINGS AGAINST THE APPELLANT IN THE LOWER COURT WERE FUNDAMENTALLY UNFAIR AND DEPRIVED HER OF THE RIGHT TO DUE PROCESS OF LAW AS GUARANTEED BY ARTICLE 1, § 1(H) OF THE PASCUA YAQUI CONSTITUTION AND THE INDIAN CIVIL RIGHTS ACT, 25 U.S.C. § 1302(8) ............................................. 6

        A.    The court failed to properly advise the Appellant of her rights during all proceedings .................................................................. 6

        B.    The repeated admission of inadmissible evidence deprived the Appellant of her right to a fair trial ......................................... 7

        C.    The lower court's negative inference to the Appellant's invocation of her right to remain silent deprived her of a fair trial ............... 10

        D.    The cumulative effect of the errors during the Appellant's trial rendered her trial fundamentally unfair ....................................... 11

    II.    THERE IS NO EVIDENCE THAT THE APPELLANT'S CERTIFICATE OF ENROLLMENT WAS ENTERED INTO EVIDENCE AND THE LOWER COURT ERRED IN EXERCISING JURISDICTION OVER THE APPELLANT AND FINDING HER GUILTY OF COUNTS FIVE AND SIX ......................................................... 11

    III.    THE APPELLEE'S RESPONSE REGARDING THE ILLEGAL SENTENCE IMPOSED ON THE APPELLANT FAILS TO ADDRESS THE RELEVANT LAW ............................................. 13

**CONCLUSION** ..................................................................................................... 14

**CERTIFICATE OF SERVICE** ............................................................................. 16

# TABLE OF AUTHORITIES

**Cases**

*Chapman v. California*, 386 U.S. 18 (1967) .................................................................. 6, 10

*Crawford v. Washington*, 541 U.S. 36 (2004) ..................................................................... 8

*Elrod v. Mashantucket Pequot Gaming Enterprises*, No. MPTC-EA-2001-109 (2001) ....... 12

*Frias v. Yumpicio*, CA-08-006 (2008) ............................................................................ 4, 5

*Gideon v. Wainwright*, 372 U.S. 335 (1963) ..................................................................... 15

*Pascua Yaqui Tribe v. Molina*, CA-04-002 (2004) .............................................................. 4

*Pascua Yaqui Tribe v. Ramirez*, CA-02-003 (2006) .................................................. passim

*Pascua Yaqui Tribe v. Soto* CA-06-010 (2007) ................................................................... 5

*Robbins v. Small*, 371 F.2d 793 (1st Cir. 1967) .................................................................. 9

*Spears v. Red Lake*, 363 F.Supp.2d 1176 (D. Minn. 2005) .......................................... 13, 14

*Taylor v. Kentucky*, 436 U.S. 478 (1978) ........................................................................... 6

*Waters v. Colville Confederated Tribes*, 3 CCAR 35 (1996) ............................................... 8

**Other Authorities**

BLACK'S LAW DICTIONARY (6TH Ed. 1990) ................................................................ 13

## STATEMENT OF FACTS

The Appellant objects to the following allegations contained the statement of facts in the Appellee's answer brief:

1. "Appendix B" to the Appellee's answer brief;

2. Appellee's statement that the Appellant has been represented by the Public Defender in three different criminal matters. [Appellee's Answer Brief at 2];

3. Appellee's allegation that the Appellant "has undoubtedly been apprised of her rights in the past by competent attorneys from the Office of the Public Defender." [Appellee's Answer Brief at 8];

4. Appellee's assertion that the Appellant "knew how to contact Chief Public Defender Nicholas Fontana." [Appellee's Answer Brief at 8];

5. Appellee's allegation that the Appellant "had access to phones, the ability to correspond in writing during her detention stay at both Pascua Yaqui Detention facility and McKinley County Detention Center." [Appellee's Answer Brief at 8].

The "facts" set forth above are not contained in the record on appeal. The inclusion and reference to these alleged facts is in violation of the Pascua Yaqui Tribe Rules of Appellate Procedure and the rulings of this Court. *Frias v. Yucupicio*, CA-08-006, at 2 (2008) (hereafter "*Frias II*"); *Pascua Yaqui Tribe v. Molina*, CA-04-002, at 3 (2004).[1]

---

[1] The Appellee's violation of the rules and law is fully briefed in the Appellant's Motion to Strike, filed with this Court on January 2, 2009.

## STANDARD OF REVIEW

The Appellee correctly notes that this Court employs *de novo* review for questions of law, *Pascua Yaqui Tribe v. Soto* CA-06-010, at 8 (2007); however, the remainder of the Appellee's discourse regarding the applicable standards of review discusses standards of review which are inapplicable or inappropriate. This Court has issued a relative small number of opinions and there is not a developed body of law addressing appellate standards of review. In addition to adopting *de novo* review for questions of law, this Court has held that lower court findings of fact are reviewed for clear error, *Trias II* at 2, and that a discretionary decision of the lower court is subject to reversal if it rests on a clearly erroneous factual determination. *Soto* at 9. In addition to these three basic standards of review, this Court appears to have also adopted a "travesty of justice" standard of review.

In *Pascua Yaqui Tribe v. Ramirez*, this Court considered the appeal of a *pro se* defendant who was convicted after the lower court permitted him to take the stand and "serially incriminate himself throughout the trial." CA-02-003, at 6-7 (2006). After reviewing the entirety of the defendant's trial, this Court concluded that the defendant's trial was a "travesty of justice." *Id.* at 3. The Court held that the conduct of the trial violated the defendant's right to due process of law as guaranteed by the due process clauses of the Pascua Yaqui Tribal Constitution and Indian Civil Rights Act (ICRA). *Id.* In essence, this Court recognized that the right to a fair trial is protected by the due process clauses of the Pascua Yaqui Constitution and ICRA.

The Appellee urges this Court to adopt various standards review employed by the federal courts, such as harmless error for confrontation clause violations, abuse of discretion for evidentiary rulings, plain error for prosecutorial misconduct, and plain error when a defendant fails to object or

-5-

move for acquittal. [Appellee's Answer Brief at 4-5]. These standards of review are arguably appropriate in jurisdictions in which a defendant has the right to the appointment of legal counsel; however, it would be manifestly unjust to use such standards in a jurisdiction, like the Pascua Yaqui Indian Reservation, in which an indigent defendant does not have the right to appointed counsel.

If this Court is inclined to adopt any standard of review employed by the federal courts, Ms. Miranda urges that when reviewing proceedings in the lower court for constitutional errors, such as the right to a fair trial, this Court consider whether such error is harmless beyond a reasonable doubt. *See Chapman v. California*, 386 U.S. 18, 23-24 (1967). By concluding that the trial of the defendant in *Ramirez* was a "travesty of justice," this Court has already implicitly adopted this standard of review. The Court should not only consider whether individual errors are grounds for reversal of a conviction, but whether the cumulative effect of multiple errors has rendered a trial fundamentally unfair. *See Taylor v. Kentucky*, 436 U.S. 478, 488 n. 15 (1978) ("[T]he cumulative effect of the potentially damaging circumstances of this case violated the due process guarantee of fundamental fairness.").

## ARGUMENT

I. THE PROCEEDINGS AGAINST THE APPELLANT IN THE LOWER COURT WERE FUNDAMENTALLY UNFAIR AND DEPRIVED HER OF THE RIGHT TO DUE PROCESS OF LAW AS GUARANTEED BY ARTICLE 1, § 1(H) OF THE PASCUA YAQUI CONSTITUTION AND THE INDIAN CIVIL RIGHTS ACT, 25 U.S.C. § 1302(8).

A. <u>The court failed to properly advise the Appellant of her rights during all proceedings.</u>

The Appellee's contention that Ms. Miranda was properly advised of her rights is not supported by the record. In *Ramirez*, this Court unequivocally stated:

> [t]he trial judge *must* explain to all defendants, on the record, at least the following rights of a criminal defendant in the Pascua Yaqui Courts:

> (6) A right to have the assistance of counsel for defense at his or her expense. The trial judge *must* explain the resources the tribe has available for obtaining free counsel (including the public defender's office) and give the defendant a list of members of the Pascua Yaqui bar who charge for their services.

CA-02-003 at 7-8 (emphasis added). Unlike other portions of the *Ramirez* opinion, the language is mandatory. The record of the proceedings against Ms. Miranda in the lower court plainly reveals that, although she was advised of her right to counsel at her own expense, the lower court never explained the resources available for obtaining free counsel or gave her a list of attorneys or advocates certified to practice in the Pascua Yaqui Tribal Courts. The lower court's failure to comply with *Ramirez* corrupted the entirety of the proceedings against Ms. Miranda. There is nothing in the Appellee's response which credibly demonstrates that the lower court's error was harmless beyond a reasonable doubt. This error alone is sufficient to require the reversal of Ms. Miranda's conviction.

B.  <u>The repeated admission of inadmissible evidence deprived the Appellant of her right to a fair trial.</u>

The Appellee first contends that the lower court did not permit the introduction of inadmissible evidence in the form of hearsay, impermissible leading questions, or irrelevant or prejudice evidence. [Appellee's Answer Brief at 10]. However, confronted with the overwhelming evidence in the record that the lower court did in fact permit the introduction of inadmissible evidence, the Appellee is quick to argue that due to Ms. Miranda's failure to object during her trial, this Court should review the introduction of such evidence for plain error. Ms. Miranda respectfully submits that the adoption of such a standard would render this Court's review of the proceedings against a *pro se* defendant meaningless. Rather, this

Court should consider whether the cumulative effect of the introduction of inadmissible evidence was harmless beyond a reasonable doubt.

In her opening brief, Ms. Miranda cited numerous instances of the admission of hearsay. [Appellant's Opening Brief at 37; Transcript D at 5, 8, 10-11, 13, 26, 27, 29, 30]. The Appellee argues that the introduction of hearsay was permissible under exceptions to the hearsay rule. [Appellee's Answer Brief at 12-13]. The Appellee also contends that the introduction of hearsay does not violate a defendant's constitutional right to confrontation if it falls within a firmly rooted hearsay objection or is supported by a showing of particularized guarantees of trustworthiness. [Id., citing *Idaho v. Wright*, 497 U.S. 805, 816 (1990) and *United States v. Jefferson*, 925 F.2d 1242, 1254 (10th Cir. 1991)].

The Appellee's argument fails for a very simple reason – the cases it relies on were essentially overturned by the United States Supreme Court in *Crawford v. Washington*, 541 U.S. 36, 61 (2004) (admission of statements deemed reliable by a judge at odds with right of confrontation). The question of whether or not the hearsay solicited by the prosecutor and admitted by the lower court is subject to a hearsay exception is irrelevant. There is nothing in the record to suggest that either the prosecutor or the lower court made any effort whatsoever to comply with the rules of evidence. As one tribal court has recognized, a prosecutor's repeated attempts to introduce hearsay, over objections sustained be the court, is sufficient to deprive a defendant of the right to a fair trial. *Waters v. Colville Confederated Tribes*, 3 CCAR 35 (1996). In this case, hearsay evidence was solicited and admitted on no less than eleven occasions. Due to the repeated admission of hearsay testimony, Ms.

Miranda was deprived of her fundamental right to confront the witnesses and evidence against her.

The constitutional error caused by the admission of hearsay was aggravated by the prosecutor's use of leading questions during direct examination. The Appellee acknowledges that leading questions are generally prohibited during direct examination and notes that leading questions may be used as necessary to develop testimony. [Appellee's Answer Brief at 64]. Ms. Miranda agrees that the trial court has broad discretion in controlling the method of questioning of witnesses during a trial; however, the trial court cannot permit leading questions during direct examination to the extent that it deprives a defendant of the right of confrontation. *See Robbins v. Small*, 371 F.2d 793, 795 (1st Cir. 1967), *cert. denied*, 386 U.S. 1033 (1967). Given the fact that more than one-third (fifty-three (53) of the one-hundred and forty-three (143)) questions asked by the prosecutor were leading questions, there can be no doubt that the lower court permitted the prosecutor to run roughshod over the rules of evidence. The sheer volume of leading questions demonstrates that the prosecutor was not "developing" testimony; rather, he was putting words in the mouths of the witnesses. There is nothing in the record to suggest that leading questions were necessary to develop the witnesses' testimony. The record strongly suggests that the leading questions were used to secure the witnesses' agreement with the prosecutor's version of the facts.

Finally, the Appellee seeks to excuse the introduction of irrelevant and highly prejudicial evidence on the grounds that the unrepresented Ms. Miranda failed to object to the admission of the evidence which the lower court is "presumed to [have] ignore[d]." [Appellee's Answer Brief at 17-18]. Absent a showing that the majority of residents of the

Pascua Yaqui Reservation have attended law school, it is ridiculous to require *pro se* defendants to object on evidentiary matters. It is equally ridiculous to presume that the introduction of the irrelevant and prejudicial evidence had no effect on the lower court. Given the fact that the lower court permitted the repeated introduction of hearsay evidence and the broad use leading questions, it is more than reasonable for this Court to presume that not only did the lower court believe that the evidence was admissible, but that it was also probative of Ms. Miranda's guilt.

C.   The lower court's negative inference to the Appellant's invocation of her right to remain silent deprived her of a fair trial.

The Appellee acknowledges that it is unconstitutional for a trial judge to comment on a defendant's invocation of his or her right to remain silent during a trial. [Appellee's Answer Brief at 18]. Since remarking on a defendant's invocation of the right to remain silent during a trial is a constitution violation, this Court must determine whether the lower court's comment on the Appellant's invocation of her right to remain silent was harmless beyond a reasonable doubt. *See Chapman*, 386 U.S. at 23-24. Although the record is not complete, it does contain a substantial portion of the lower court's comment:

> The Court:   Ms. Miranda, do you have any witnesses that you wish to call at this time? Do you wish to testify?
>
> Ms. Miranda:   (inaudible).
>
> The Court:   And the Court will also inform you that your refusal to testify is highly (inaudible) on the Court by, uh, (inaudible).

[Transcript D at 33].

The statement of the lower must either be viewed as informing the Appellant that her invocation of her right to remain silent would not be used as evidence against or as informing the Appellant that her right to remain silent would be used as evidence against. The language used by the lower court, "that *your refusal* to testify is highly (inaudible)" clearly suggests that the lower court did in fact use Ms. Miranda's invocation of right to remain silent as evidence against her.

D. <u>The cumulative effect of the errors during the Appellant's trial rendered her trial fundamentally unfair.</u>

The proceedings against Ms. Miranda in the lower court were replete with serious constitutional error. The lower court failed to properly advise her of her constitutional rights, permitted the introduction of inadmissible evidence, and inferred guilt from her invocation of her right to remain silent. Taken singly, any of these errors is grounds for the reversal of Ms. Miranda's conviction. When considered cumulatively, there can be no doubt that her trial in the lower court was fundamentally unfair in violation of her right to process of law as guaranteed by the Constitution of the Yaqui Tribe and the ICRA.

II. THERE IS NO EVIDENCE THAT THE APPELLANT'S CERTIFICATE OF ENROLLMENT WAS ENTERED INTO EVIDENCE AND THE LOWER COURT ERRED IN EXERCISING JURISDICTION OVER THE APPELLANT AND FINDING HER GUILTY OF COUNTS FIVE AND SIX.

The Appellee does not dispute the fact that in order to exercise jurisdiction over Ms. Miranda, it must be established that she is an Indian. The Appellee does error in asserting that the certificate of Indian blood was admitted into evidence. For the certificate of Indian blood to have been admitted into evidence, the Appellee would have offered the exhibit as evidence, the lower court should have given Ms. Miranda the opportunity to object to its

admission, and the lower court would have either accepted or denied admission of the evidence. Such a colloquy is not to be found in the record.

Given the complete absence of any discussion regarding the certificate of Indian blood, it would be manifestly unjust for this Court to assume, given the lack of evidence in the record, that the certificate was properly offered and admitted into evidence. Nor is there testimony from any of the witnesses that Ms. Miranda was an enrolled member of a federally recognized Indian tribe. Rather than rest on the fact that the certificate of Indian blood appears in the record on appeal, this Court should be asking how it got there. Absent proof that it was properly admitted as evidence during Ms. Miranda's trial, this Court must ignore the fact that it mysteriously appears in the record on appeal.[2] Absent evidence that the certificate of Indian blood was offered and admitted into evidence, this Court cannot support the lower court's exercise of criminal jurisdiction over Ms. Miranda.

The absence of proof regarding Ms. Miranda's tribal status is also fatal to her conviction on counts five and six of the complaint. The Appellee argues that the Tribe was not required to prove that Ms. Miranda is an "Indian" in order for the lower court to convict her of threatening and intimidating in violation of 4 P.Y.T.C. § 1-260. [Appellee's Answer Brief at 24]. The Appellee's argument ignores basic rules of statutory construction. As one tribal court observed, "every word in a legislative enactment is presumed to have meaning and there is a presumption of purpose behind every sentence, clause or phrase in a legislative enactment." *Elrod v. Mashantucket Pequot Gaming Enterprises*, No. MPTC-EA-2001-109 (2001).

---

[2] Equally mysterious is the absence of the knife admitted into evidence at trial from the record on appeal.

By including the word "Indian" in 4 P.Y.T.C. § 1-260, it is clear that the legislative body of the Pascua Yaqui Tribe intended that status as an Indian was an essential element of the offense. As previously discussed, the Appellee failed to introduce any evidence regarding Ms. Miranda's status as an Indian. As a result, the lower court erred in finding her guilty of counts five and six of the complaint.

III. THE APPELLEE'S RESPONSE REGARDING THE ILLEGAL SENTENCE IMPOSED ON THE APPELLANT FAILS TO ADDRESS THE RELEVANT LAW.

It is difficult to make sense of the Appellee's response to Ms. Miranda's argument regarding the imposition of a sentence of nine-hundred and ten (910) days of imprisonment in violation of the Indian Civil Rights Act (ICRA). Curiously, the Appellee ignores the relevant provision of the ICRA, 25 U.S.C. § 1302(7), and federal cases discussing the meaning of the punishment clause. Instead, the Appellee embarks on a lengthy discourse regarding the doctrine of multiplicity, which has nothing whatsoever to do with the legal argument made by the Ms. Miranda in her opening brief. As any law student with access to a legal dictionary knows, "multiplicity" refers to the practice of charging the commission of a single offense in several counts. BLACK'S LAW DICTIONARY 1016 (6th Ed. 1990). Multiplicity relates to how criminal offenses are charged, not as to how they are punished.

In an attempt to deal with *Spears v. Red Lake*, 363 F.Supp.2d 1176 (D. Minn. 2005), which plainly demonstrates that the lower court imposed in illegal sentence, the Appellee states that the court in *Spears* employed the "*Blockburger* test." [Appellee's Answer Brief at 27]. Nothing could be further from the truth:

> Alternatively, Congress could have intended to adopt the strict "same offense" test applied in the double jeopardy context. *See Blockburger v. United States*, 284 U.S. 299, 304, 76 L.Ed. 306, 52 S.Ct. 180 (1932) (holding two

offenses are not the "same" if "each provision requires proof of an additional fact which the other does not"). But the statutory history does not support such an intent. Given that the ICRA's central goal was to extend Constitutional protections to Native Americans, it would be bizarre to assume Congress intended to patch the crabbed double jeopardy standard onto unrelated provisions of the Act.

*Spears*, 363 F.Supp.2d at 1180. Rather than adopt the *Blockburger* test, the court expressly and unequivocally rejected adoption of the test for the purpose of determining whether a sentence complies with the punishment clause of the ICRA.

## CONCLUSION

The fundamental question before this Court is whether Beatrice Miranda, a *pro se* defendant, prosecuted by a licensed attorney, received a fair trial before being sentenced to nine-hundred and ten (910) days in prison. The only answer to that question which reflects any notion of fundamental due process of law is "no."

In *Ramirez*, this Court went to great lengths to gently instruct the lower court on the fundamental rights of defendants in the Pascua Yaqui Tribal Court. This Court went so far as to provide guidance regarding the steps the lower court should take to ensure that the trials of *pro se* defendants would not be reduced to "travesties of justice." Sadly, the lower court has failed to follow the sage advice given by the Court.

In deciding this case, this Court must not only be cognizant of the violation of Ms. Miranda's rights, but must also be aware that the majority of defendants in the lower court are not represented by legal counsel. In *Ramirez*, this Court expressly acknowledged that reality. *Ramirez* at 3. The Court's opinion in *Ramirez* sought to remedy this situation by imposing certain requirements on the lower court in the hopes of avoiding trials which can be described as "travesties of justice."

As evidenced by Ms. Miranda's prosecution, the lower court and prosecuting attorneys have seen fit to ignore these requirements.[3]

WHEREFORE Appellant Beatrice Miranda respectfully renews her plea that this Court enter an order reversing her conviction and dismissing the charges against her, mandating the lower court's compliance with *Pascua Yaqui Tribe v. Ramirez*, CA-02-003 (2006), and adopting such measures as necessary to guarantee the fundamental constitutional right to a fair trial to all persons facing prosecution in the Pascua Yaqui Tribal Court.

DATED this 3rd day of February, 2009.

PASCUA YAQUI PUBLIC DEFENDER

*/s/ Nicholas A. Fontana*
Nicholas A. Fontana
Chief Public Defender
Attorney for Appellant

---

[3] In light of the lower court's failure to comply with *Ramirez*, there is only one way to ensure that the constitutional rights of indigent defendants in the Pascua Yaqui Tribal Court are protected – mandating the appointment of counsel for indigent defendants when the Tribe seeks incarceration. As the United State Supreme Court observed nearly half a century ago:

> in our adversary system of criminal justice, any person haled into court, who is too poor to hire a lawyer, cannot be assured a fair trial unless counsel is provided for him. This seems to us to be an obvious truth. Governments, both state and federal, quite properly spend vast sums of money to establish machinery to try defendants accused of crime. Lawyers to prosecute are everywhere deemed essential to protect the public's interest in an orderly society. Similarly, there are few defendants charged with crime, few indeed, who fail to hire the best lawyers they can get to prepare and present their defenses. That government hires lawyers to prosecute and defendants who have the money hire lawyers to defend are the strongest indications of the widespread belief that lawyers in criminal courts are necessities, not luxuries. The right of one charged with crime to counsel may not be deemed fundamental and essential to fair trials in some countries, but it is in ours. From the very beginning, our state and national constitutions and laws have laid great emphasis on procedural and substantive safeguards designed to assure fair trials before impartial tribunals in which every defendant stands equal before the law. This noble ideal cannot be realized if the poor man charged with crime has to face his accusers without a lawyer to assist him.

*Gideon v. Wainwright*, 372 U.S. 335, 344 (1963).

## CERTIFICATE OF SERVICE

I hereby certify that Appellant's Reply Brief was e-mailed this to:

Bill Kniep
Bill.Kniep@pascuayaqui-nsn.gov
Clerk of the Court of Appeals
Pascua Yaqui Court of Appeals
7474 South Camino de Oeste
Tucson, AZ 85757

and that one (1) copy of Appellant's Opening Brief was delivered this date to:

Alfred Urbina
Alfred.Urbina@pascuayaqui-nsn.gov
Deputy Prosecutor
Office of the Prosecutor of the Pascua Yaqui Tribe
7474 South Camino de Oeste
Tucson, AZ 85757

DATED this 3rd day of February, 2009.

PASCUA YAQUI PUBLIC DEFENDER

_/s/ Nicholas A. Fontana_
Nicholas A. Fontana
Chief Public Defender