JON M. SANDS
Federal Public Defender, District of Arizona

DANIEL L. KAPLAN, AZ Bar #021158
Assistant Federal Public Defender
KEITH J. HILZENDEGER, AZ Bar #023685
Research & Writing Specialist
850 West Adams Street, Suite 201
Phoenix, Arizona 85007
Telephone: (602) 382-2767
Fax: (602) 382-2800
dan_kaplan@fd.org
keith_hilzendeger@fd.org
*Attorneys for Petitioner*

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF ARIZONA

| | |
|---|---|
| Beatrice Miranda,<br><br>          Petitioner,<br><br>vs.<br><br>Tracy Nielsen *et al.*,<br><br>          Respondents. | No. CIV 09-08065-PCT-PGR (ECV)<br><br>**PETITIONER'S MOTION FOR SUMMARY JUDGMENT** |

Petitioner Beatrice Miranda, by and through undersigned appointed counsel, pursuant to Fed. R. Civ. P. 56(c), submits this motion for summary judgment. In the interest of expediting the Court's ruling, Ms. Miranda is not requesting oral argument. However, counsel for Ms. Miranda stand ready to present oral argument if the Court believes that it would be helpful.

//
//
//
//
//

**MEMORANDUM OF POINTS AND AUTHORITIES**

Ms. Miranda is before the Court on a petition for a writ of habeas corpus to secure her release from illegal confinement on order of the Pascua Yaqui Tribe ("the Tribe"), of which she is an enrolled member. The sole ground for relief she has asserted is that the 910-day sentence imposed by the tribal court violates the limit on tribal sentencing imposed by the Indian Civil Rights Act, 25 U.S.C. § 1302(7), because it resulted from consecutive sentencing on multiple counts arising out of a single criminal transaction. She has exhausted her remedies in the tribal courts, and now seeks relief from this Court.

Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Mangum v. Action Collection Serv., Inc.*, 575 F.3d 935, 938 (9th Cir. 2009). In this case, the parties do not dispute that the tribal court imposed a 910-day sentence in Ms. Miranda's case, and that the tribal appellate court has already ruled on the merits of the claim on which Ms. Miranda is seeking relief before this Court. All that remains is for this Court to decide two questions of law; hence, this case is ripe for resolution on summary judgment.

**1. Ms. Miranda's claim is exhausted because she presented it to the Pascua Yaqui Tribe Court of Appeals on her direct appeal.**

Ms. Miranda presented her claim on direct appeal to the Pascua Yaqui Tribe Court of Appeals. Statement of Facts in Support of Petitioner's Motion for Summary Judgment ("SOF") ¶ 46. The Pascua Yaqui Tribe Court of Appeals is the Tribe's court of last resort. *Id*. ¶ 48. That court rejected her claim on the merits. *Id*. ¶ 47. Under directly controlling Ninth Circuit precedent, this Court should rule that Ms. Miranda has thus exhausted her tribal-court remedies with respect to her claim.

As a general rule, a habeas petitioner must exhaust her tribal-court remedies before seeking relief in federal court from illegal detention imposed by tribal courts. *See Selam v. Warm Springs Tribal Corr. Facility*, 134 F.3d 948, 953 (9th

Cir. 1998).  "Considerations of comity, along with the desire to avoid procedural nightmares, have prompted the Supreme Court to insist that the federal court stay[] its hand until after the Tribal Court has had a full opportunity . . . to rectify any errors it may have made."  *Id*. (alterations in original) (quoting *Nat'l Farmers Union Ins. Cos. v. Crow Tribe*, 471 U.S. 845, 857 (1985)).  Although the general policy favors exhaustion of claims in tribal court, courts may waive or relax that requirement when the need to "immediately adjudicate alleged deprivations of individual rights" outweighs "the need to preserve the cultural identity of the tribe by strengthening the authority of the tribal courts."  *Id*. (quoting *United States ex rel. Cobell v. Cobell*, 503 F.2d 790, 793 (9th Cir. 1974)).  Courts will strike that balance in favor of the tribal court system when the petitioner does not present her claim to the tribe's highest appellate court on direct appeal from her conviction, and in favor of the individual petitioner when she does.

Ms. Miranda presented the same claim she is raising before this Court to the Pascua Yaqui Tribe Court of Appeals on her direct appeal.  SOF ¶ 46.  In *Selam*, the court reviewed the merits of a compulsory-process claim under 25 U.S.C. § 1302(6) because the petitioner had presented it to the tribe's appellate court on direct appeal from his conviction.  *Selam*, 134 F.3d at 951-53.  Just as the court in *Selam* ruled that the compulsory-process claim in that case had been exhausted and reached the merits, this Court should likewise rule that Ms. Miranda's claim is exhausted and reach the merits.

**2.    Ms. Miranda's sentence violates the sentencing restriction of the Indian Civil Rights Act because it exceeds one year for a single criminal transaction.**

Under the Indian Civil Rights Act (ICRA), "No Indian tribe exercising powers of self-government shall . . . impose for conviction of any one offense any penalty or punishment greater than imprisonment for a term of one year."  25 U.S.C. § 1302(7).  When Congress passed ICRA, it "found that many tribes were

not psychologically or financially prepared to extend every constitutional right to their members." *Spears v. Red Lake Band of Chippewa Indians*, 363 F. Supp. 2d 1176, 1179 (D. Minn. 2005). ICRA's restriction on sentencing authority thus limited the ability of Indian tribes to impose lengthy prison sentences on their members in exchange for permitting them to deny to their members the fundamental right to representation by appointed counsel when facing lengthy prison sentences. *See id*. Congress could comfortably strike this balance because of the Major Crimes Act, 18 U.S.C. § 1153, which required felonies committed in Indian country to be prosecuted in federal court, where the defendant would be entitled to representation by appointed counsel. *Spears*, 363 F. Supp. 2d at 1180.

In order to maintain the balance Congress struck between the ICRA and the Major Crimes Act, it makes sense to interpret ICRA in such a way as to guarantee that only low-stakes criminal prosecutions take place in tribal court. At the time ICRA was enacted in 1968, states were not required to appoint counsel for persons facing only misdemeanor charges carrying a maximum sentence of six months in jail. *See id*. at 1179 (citing *Beck v. Winters*, 407 F.2d 125, 127-28 (8th Cir. 1969)). If ICRA could be interpreted to allow persons facing much greater punishment to be required to face trial without counsel, "tribal court defendants would be routinely exposed to serious sentences for minor crimes without guaranteeing them all their basic constitutional rights." *Id*. at 1180.

Hence, when ICRA forbids imposing a sentence of more than one year in prison for "any one offense," that phrase must refer to "any single criminal transaction." *Id*. In light of prevailing constitutional requirements at the time of enactment, Congress would not have intended a contrary result. *See id*. This Court should therefore conclude that "Congress intended to adopt the concept that separate crimes arising from a single criminal episode should normally be treated as a single offense for sentencing purposes" under ICRA. *Id*. (citing *Prince v. United States*, 352 U.S. 322 (1957)).

For purposes of ICRA's sentencing provision, criminal charges stem from a "single criminal transaction" when they are "factually and legally intertwined." *Id*. at 1181. Ms. Miranda's eight criminal charges satisfy these criteria. They are based on a single episode involving three people and taking place within a brief period of time within a one- or two-block area. SOF ¶¶ 3-4. Ms. Miranda and the two victims were involved in an argument; Ms. Miranda waved a knife at the victims until one of the victims threw a basketball at her, striking her in the face, and then she fled. *Id*. ¶¶ 8-33. This one episode led to the eight separate criminal charges in this case. These charges plainly stem from a "common nucleus of operative fact," and are thus factually intertwined. *Spears*, 363 F. Supp. 2d at 1181.

The charges are also legally intertwined. The Tribe charged Ms. Miranda with eight crimes—violations of four different provisions of its criminal code against each of two victims. SOF ¶ 4. The crimes were aggravated assault, endangerment, threatening or intimidating, and disorderly conduct. *Id*. Under the Pascua Yaqui Tribal Code, aggravated assault is committed by "us[ing] a deadly weapon or dangerous instrument" to "intentionally plac[e] another person in reasonable apprehension of imminent physical injury." SOF ¶ 5. Endangerment is committed by "recklessly endanger[ing] another person with a substantial risk of imminent death or physical injury." SOF ¶ 6. Threatening or intimidating is committed by "caus[ing] another person to reasonably believe that he/she is in danger of receiving physical injury." SOF ¶ 7. And disorderly conduct is committed by "engag[ing] in fighting or provoking a fight in a public place." SOF ¶ 8. Brandishing a knife at a person during the course of a verbal altercation is conduct sufficient to constitute all four of these crimes. Thus these four crimes—and all eight charges—are legally intertwined. *Spears*, 363 F. Supp. 2d at 1181-82.

Ms. Miranda's sentence is thus based on a "single criminal transaction," which constituted a single "offense" within the meaning of ICRA. The 910-day

1 | sentence exceeds the maximum allowable under ICRA by 545 days, or a year and
2 | a half.  Because Ms. Miranda's sentence was thus imposed in violation of ICRA,
3 | this Court should grant her petition.

5 |    Respectfully submitted: October 1, 2009

JON M. SANDS
Federal Public Defender

 *s/Daniel L. Kaplan*
DANIEL L. KAPLAN
Assistant Federal Public Defender
KEITH J. HILZENDEGER
Research & Writing Specialist

1  Copy of the foregoing transmitted by CM/ECF for filing and transmittal
2  to the following ECF registrant this 1st day of October, 2009, to:

3  CLERK'S OFFICE
   United States District Court
4  Sandra Day O'Connor Courthouse
   401 West Washington Street
5  Phoenix, Arizona 85003

6  ALFRED LOPEZ URBINA
   Pascua Yaqui Office of the Prosecutor
7  7474 South Camino de Oeste
   Tucson, Arizona 85757
8

9  AMANDA JOANNE SAMPSON
   Pascua Yaqui Tribe
10 Office of the Attorney General
   4725 West Calle Tetakusim, Bldg. B
11 Tucson, Arizona 85757-9264

12 KIMBERLY CHASTAIN VAN AMBURG
13 Van Amburg Law Firm PLLC
   325 West Franklin Street, Suite 115
14 Tucson, Arizona 85701

15 RICARDO ROLANDO FLORES
   Office of the Attorney General
16 Pascua Yaqui Tribe
17 4725 West Calle Tetakusim, Bldg. B
   Tucson, Arizona 85757
18
   TIMOTHY G. MCNEEL
19 Coconino County Attorney's Office
   110 East Cherry Street
20 Flagstaff, Arizona 86001-4627

21
   JOHN R. LOPEZ, IV
22 Assistant United States Attorney
   Two Renaissance Square
23 40 North Central Avenue, Suite 1200
   Phoenix, Arizona 85004-4408
24
25 CHRIS HARNEY
   Main Officer
26 Truxton Cañon Correctional Facility
   P.O. Box 69
27 Peach Springs, AZ 86434

28

7

1  Copy mailed this 1st day
2  of October, 2009, to:

3  BEATRICE MIRANDA
   Petitioner
4

5
   *s/ Susan L. West*
6

7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28