IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

|  |  |
|---|---|
| Beatrice Miranda,<br><br>  Petitioner,<br><br>vs.<br><br>Tracy Nielson, et al.,<br><br>  Respondents. | CV 09-8065-PHX-PGR (ECV)<br><br>**REPORT AND RECOMMENDATION** |

TO THE HONORABLE PAUL G. ROSENBLATT, UNITED STATES DISTRICT JUDGE:

**BACKGROUND**

Petitioner Beatrice Miranda has filed an Amended Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. Doc. #18. Petitioner initially filed a *pro se* petition on April 17, 2009. Doc. #1. On June 25, 2009, Judge Rosenblatt granted Petitioner's request to appoint the Office of the Federal Public Defender to represent her. Doc. #8.

On January 26, 2008, the Pascua Yaqui Tribe filed an eight count complaint against Petitioner alleging aggravated assault, endangerment, threatening or intimidating and disorderly conduct against two separate victims. Doc. #18 at 3, 6. The convictions arose from an incident in which Petitioner, while holding a knife, chased one of the victims down the street. Doc. #18 at 5-8. After the victim ran to her home, her sister went outside and confronted Petitioner. Id. Petitioner, who was extremely intoxicated, continued to brandish

1  the knife and she made threats to the victims. Id. One of the victims then threw a basketball
2  at Petitioner and struck her in the face, causing Petitioner to leave. Id.

3  A trial before a tribal court judge was held on April 21, 2008. Doc. #18 at 3.
4  Petitioner, who was unrepresented by counsel, was found guilty on all counts. Id. On May
5  19, 2008, the tribal court sentenced Petitioner to a total of 910 days of incarceration with
6  credit for 114 days of time served. Id. Petitioner received consecutive sentences of one year
7  each for the aggravated assault counts. Doc. #18 at 8. Shorter terms were imposed for each
8  of the remaining six counts, some of which were order to run consecutively and some
9  concurrently. Id. The sentence is set to terminate on July 24, 2010. Id. at 3.

10  An attorney with the office of the Pascua Yaqui Public Defender represented
11  Petitioner on direct appeal. Id. at 9. On March 29, 2009, the Pascua Yaqui Court of Appeals
12  ("PYCA") denied Petitioner's claims on the merits and affirmed her convictions and
13  sentences. Id. at 5.

14  As explained above, Petitioner filed a *pro se* Petition for Writ of Habeas Corpus in
15  this court on April 17, 2009. Doc. #1. Through appointed counsel, she filed an Amended
16  Petition for Writ of Habeas Corpus on July 29, 2009. Doc. #18. Petitioner raises one claim
17  in her amended petition. Petitioner alleges that her sentence of two and a half years in prison
18  exceeded the maximum sentence permitted under the Indian Civil Rights Act at 25 U.S.C.
19  § 1302(7). Doc. #18 at 10. She contends that the tribal court was without authority to
20  impose a sentence of more than one year in prison. Id.

21  Respondent Tracy Nielsen ("Respondent") filed an Answer to Petition for Writ of
22  Habeas Corpus on September 23, 2009. Doc. #32.[1] On October 1, 2009, Petitioner filed a
23  Motion for Summary Judgment and a supporting Statement of Facts. Doc. #33, #34.
24  Respondent then filed a Cross Motion for Summary Judgment and a Response in Opposition
25  to Petitioner's Motion for Summary Judgment, along with a supporting Memorandum and

---

[1] The other respondents also filed answers. Doc. #22, #25. They essentially contend, however, that they are not proper respondents, and Respondent Nielsen does not assert otherwise.

- 2 -

1 Statement of Facts. Doc. #36, #37, #38, #39. On November 13, 2009, Petitioner filed a
2 Reply in Support of Motion for Summary Judgment and Response to Cross Motion for
3 Summary Judgment, along with a Controverting Statement of Facts. Doc. #42, #43. On
4 November 30, 2009, Respondent filed a Reply in Support of Cross Motion for Summary
5 Judgment. Doc. #44.

**DISCUSSION**

7 The parties agree that there are no genuine issues of material fact in dispute here and
8 that this case is properly resolved on a motion for summary judgment. The legal issues
9 before the court are whether Petitioner exhausted her tribal court remedies before filing a
10 federal habeas petition, and whether the sentence imposed against Petitioner in the tribal
11 court is lawful under the Indian Civil Rights Act ("ICRA") at 25 U.S.C. § 1302(7).

12 **1.    Exhaustion**

13 Respondent first contends that the petition should be denied because Petitioner failed
14 to exhaust her tribal court remedies. Respondent claims that Petitioner was required to seek
15 a writ of habeas corpus before the PYCA to satisfy the exhaustion requirement. Petitioner
16 argues that she already presented the same claim at issue here to the PYCA in her direct
17 appeal. She contends that presenting the same claim to the PYCA a second time would be
18 futile and is not required to demonstrate exhaustion.

19 Neither party has cited, and the court is not aware of, a statutory exhaustion
20 requirement in this context. The Supreme Court, however, has determined that exhaustion
21 of tribal court remedies is important to the "federal policy of promoting tribal self-
22 government." Iowa Mut. Ins. Co. v. LaPlante, 480 U.S. 9, 16-17 (1987). Further, the Court
23 has recognized that development of a full record in a tribal court will promote the orderly
24 administration of justice in the federal court. National Farmers Union Ins. Companies v.
25 Crow Tribe of Indians, 471 U.S. 845, 856 (1985). The federal court should therefore "stay[]
26 its hand until after the Tribal Court has had a full opportunity ... to rectify any errors it may
27 have made." Id. at 857. "At a minimum, exhaustion of tribal remedies means that tribal

- 3 -

1  appellate courts must have the opportunity to review the determinations of the lower tribal
2  courts." Iowa Mut. Ins. Co., 480 U.S. at 17.

3  Exhaustion of tribal court claims, however, is not an inflexible requirement. Selam
4  v. Warm Springs Tribal Correctional Facility, 134 F.3d 948, 953 (9th Cir. 1998) (citing
5  United States ex rel. Cobell v. Cobell, 503 F.2d 790 (9th Cir. 1974)). As the Cobell court
6  explained:

> A balancing process is evident; that is weighing the need to preserve the cultural identity of the tribe by strengthening the authority of the tribal courts, against the need to immediately adjudicate alleged deprivations of individual rights. Thus, this Court must determine whether exhaustion is appropriate in the case at bar.

10 Cobell, 503 F.3d at 793 (quoting O'Neal v. Cheyenne River Sioux Tribe, 482 F.2d 1140,
11 1146 (8th Cir. 1973)).

12  Applying these balancing principles here, the court finds that Petitioner has satisfied
13 the exhaustion requirement. Petitioner presented her ICRA claim to the PYCA, the tribe's
14 highest court, and the court rejected it. As Petitioner points out in her reply, the PYCA has
15 rejected as "frivolous" the same ICRA claim raised by another member of the tribe. Doc.
16 #42 at 2. Because the PYCA has already rejected this claim more than once, presenting it
17 again in a tribal habeas petition would be an exercise in futility. Such is not required to
18 exhaust tribal court remedies. Moreover, as Petitioner argues, even the strict exhaustion
19 requirements for habeas petitions under 28 U.S.C. § 2254 do not require a petitioner to
20 present on collateral review to a state court the same claims already raised on direct review.
21 The court will not impose such a requirement here. For these reasons, the court finds that
22 Petitioner has satisfied the exhaustion requirement. The court will, therefore, consider the
23 merits of Petitioner's claim.

24  **2.  Merits Analysis**

25  Petitioner contends that because all eight of the criminal counts against her arise from
26 the same transaction, the total sentence for those counts could not exceed one year in prison.
27 Respondent claims that Petitioner's two and a half year sentence was lawful because the
28

- 4 -

1  statute authorizes up to one year in prison for each offense, and Petitioner was convicted of
2  eight offenses.

3  Under the ICRA, "[n]o Indian tribe in exercising powers of self-government shall ...
4  impose for conviction of any one offense any penalty or punishment greater than
5  imprisonment for a term of one year...." 25 U.S.C. § 1302(7).  The interpretation of a federal
6  statute is a matter of federal law.  McInnes v. California, 943 F.2d 1088, 1094 (9th Cir. 1991).

7  Based on the parties' filings and the court's research, it appears that only two district
8  courts, and no circuit courts, have addressed the precise issue before the court.  In Ramos v.
9  Pyramid Tribal Court, 621 F.Supp. 967 (D. Nev. 1985), the petitioner was convicted of
10 several violations arising from the same incident and sentenced to consecutive sentences that
11 totaled more than two years.  The petitioner filed a habeas petition in federal court and
12 raised, among other things, a claim that his sentence violated the cruel and unusual
13 punishment provision of the ICRA.  Id. at 970.  In deciding the cruel and unusual punishment
14 question, the court considered whether the sentence exceeded the one year maximum allowed
15 by § 1302(7).  Id.  With limited analysis, the court determined that the tribal court's
16 imposition of consecutive sentences did not constitute cruel and unusual punishment.  Id.
17 The court indicated that it could find no cases holding as such and it noted that imposing
18 consecutive sentences is a commonly exercised power of judges.  Id.  The court did not
19 analyze the question of whether the petitioner's several violations constituted "one offense"
20 for sentencing purposes under § 1302(7).

21 In Spears v. Red Lake Band of Chippewa Indians, 363 F.Supp.2d 1176 (D. Minn.
22 2005), the petitioner pleaded guilty to six criminal charges in tribal court, including negligent
23 homicide, driving under the influence of alcohol, failing to take a blood, breath or urine test,
24 failing to stop at the scene of an accident, and two minor violations.[2]  All the charges arose
25 from an incident in which the petitioner was driving while intoxicated and struck and killed

---

[2] The petitioner was also charged with involuntary manslaughter in federal court, where he pleaded guilty and received a sentence of 14 months in prison.  Spears, 363 F.Supp.2d at 1176-77.

- 5 -

1  a person lying on the road. Spears, 363 F.Supp.2d at 1176. The tribal court sentenced the
2  petitioner to consecutive sentences on the four more serious violations that totaled 30
3  months. Id. at 1177. After seeking review in the tribal courts, the petitioner filed a habeas
4  petition in federal court claiming that his sentence violated the ICRA provision that limits
5  tribal court prison sentences to 12 months for "conviction of any one offense." Id.

6  The court first looked at the language of the statute and found that the phrase "any one
7  offense" is ambiguous. Spears, 363 F.Supp.2d at 1178. It explained how similar language
8  in other contexts has caused disagreement. The court looked at Supreme Court cases in the
9  Fifth and Sixth Amendment arenas to illustrate how the phrase could mean either "any
10 discrete violation of the Tribal Code" or "any prosecution arising from a single criminal
11 transaction or episode." Id. at 1178-79. By determining that the phrase is subject to more
12 than one interpretation, the court examined congressional intent in an effort to construe the
13 statute "to effectuate the underlying purposes of the law." Id. at 1179 (quoting United States
14 v. McAllister, 225 F.3d 982, 986 (8th Cir. 2000)).

15 In determining congressional intent, the court considered the ICRA history and its
16 underlying purposes. Id. at 1179. Addressing the history, the court explained that because
17 many tribes were not prepared to extend the full range of federal constitutional rights to their
18 members, the ICRA affords only a limited set of rights. Id. Among the rights not afforded
19 under the ICRA is publicly funded counsel for criminal defendants in tribal court. Id. Thus,
20 the original version of the ICRA in 1968 limited the maximum sentence in tribal court to six
21 months, with no guarantee of an appointed lawyer. Id. A subsequent amendment in 1986
22 increased the maximum sentence to one year. Id.

23 In discussing the purpose of the ICRA, the court explained that in 1968 Congress
24 knew that under the Major Crimes Act, Indians facing prosecution for serious charges in
25 federal court received the full range of constitutional rights. Id. at 1180. As the court stated:

26 > Taken together, the ICRA and the Major Crimes Act created a balanced and logical regime: Indians accused of minor crimes faced minor penalties in tribal
27 > court where some constitutional rights were withheld; Indians accused of serious crimes faced serious penalties in federal court where all constitutional
28 > rights were available.

1 Id. The court found, however, that this balance could be maintained only if "any one
2 offense" is interpreted to mean "a single criminal transaction." Id. To do otherwise would
3 expose tribal court defendants to serious sentences without the guarantee of all their
4 constitutional rights. Id. For these reasons, the court found "that Congress intended to adopt
5 the concept that separate crimes arising from a single criminal episode should normally be
6 treated as a single offense for sentencing purposes." Id. at 1181. The court therefore
7 interpreted the phrase "any one offense" to mean "a single criminal transaction." Id.

8 The court then applied its analysis to determine if the petitioner's violations were part
9 of " a single criminal transaction." Id. The court determined that the petitioner's charges
10 arose from a "common nucleus of operative fact surrounding his ill-fated drive on April, 1,
11 2000" and were therefore factually intertwined. Id. The court further found that the charges
12 were legally intertwined. Id. As a result, the court concluded that "the violations underlying
13 petitioner's tribal court sentence are facets of a single criminal event." Id. at 1182. It
14 therefore held that the 30 month sentence imposed by the tribal court exceeded the maximum
15 sentence permitted for "one offense." Id. The court granted the habeas petition and
16 remanded the matter to the tribal court. Id.

17 Although the court is bound by neither of these two decisions, the court finds the
18 reasoning of the Spears case persuasive and adopts it here. In light of the history and purpose
19 behind the passage of the ICRA in 1968, the court is convinced that Congress did not intend
20 to allow tribal courts to impose multiple consecutive sentences for criminal violations arising
21 from a single transaction. To hold otherwise would expose a tribal court defendant to a
22 lengthy prison term without the protection of representation by counsel and other critical
23 constitutional rights. The circumstances surrounding the passage of the ICRA clearly
24 demonstrate that in return for alleviating the tribes of the burden of extending every federal
25 constitutional right to its members, Congress intended to significantly limit the sentence that
26 a tribal court can impose. Therefore, like the Spears court, the court here finds that the
27 phrase "any one offense" in § 1302(7) of the ICRA means "a single criminal transaction."
28

1   Moreover, the court has no difficulty finding that Petitioner's actions in this case
2   constitute a single criminal transaction.  Like the charges in Spear, the charges here arose
3   from a common nucleus of operative fact beginning with Petitioner chasing the first victim
4   with a knife.  Petitioner followed the victim to her home where Petitioner encountered the
5   second victim.  The incident was relatively brief and it was confined to a small area.  There
6   is no question that the charges that arose from this incident are factually and legally
7   intertwined.  By finding that Petioner's charges arose from "a single criminal transaction,"
8   the court concludes that Petitioner's sentence of 910 days exceeded the 12 month maximum
9   permitted by the ICRA.[3]  The court will therefore recommend that the petition be granted and
10  that this matter be remanded to the Pascua Yaqui Tribal Court for re-sentencing.

**IT IS THEREFORE RECOMMENDED:**

That Petitioner's Motion for Summary Judgment (Doc. #33) be **GRANTED**;

That Respondent's Cross Motion for Summary Judgment (Doc. #36) be **DENIED**;

That Petitioner's Amended Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 (Doc. #18) be **GRANTED**; and

That this matter be remanded to the Pascua Yaqui Tribal Court for re-sentencing.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals.  Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment.  The parties shall have ten days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. See, 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(b) and 72.  Thereafter, the parties have ten days within which to file a response to the objections.  Failure to timely file objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the district court without further review. See United States v. Reyna-Tapia, 328 F.3d 1114,

---

[3] Nothing in this Report and Recommendation should be construed to mean that a tribal court is prohibited from imposing consecutive sentences that exceed a total of one year in prison when the defendant is involved in more than one criminal transaction.

- 8 -

1121 (9th Cir. 2003).  Failure to timely file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to appellate review of the findings of fact in an order of judgement entered pursuant to the Magistrate Judge's recommendation.  See Fed. R. Civ. P. 72.

DATED this 14th day of December, 2009.

Edward C. Voss
United States Magistrate Judge